THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY
COMPANY v. N. N. CLINKENBEARD.

No. 15,433.   (94 Pac. 1001.)

SYLLABUS BY THE COURT.

1. .RAILROADS—*Injury to Licensee—Proximate Cause.* Although
a plaintiff, while walking and driving a team, has been guilty
of negligence in entering a long, narrow strip of ground hav-
ing a railroad track on one side and insurmountable obstacles
on the other, he is not thereby prevented from recovering
damages received from being overtaken by a railroad-train
if he tried to, and could not, extricate himself, and the en-
gineer of the train saw his situation in time to stop the train
and avoid a collision.

2. INSTRUCTIONS—*Immaterial Error.* An instruction or qualifi-
cation of an instruction based upon a supposititious fact, even
if erroneous, is not prejudicial when the findings of the jury,
supported by evidence, affirmatively show that such sup-
posititious fact is not the basis of, nor inherent in, the ver-
dict.

Error from Smith district court; RICHARD M. PICK-
LER, judge.   Opinion filed March 7, 1908.   Affirmed.

STATEMENT.

THIS case was once before in this court, and in the
opinion then rendered (72 Kan. 559) a general state-
ment of the facts will be found.   The findings of fact
made by the.jury and approved by the court on the
second trial indicate, it will be observed, a considera-
ble departure from the case as before submitted.   The
special findings of the jury are as follow:

"(1) Ques.   What was the distance from the house-
track switch to the point where Cal Owens's wagon
stood at the time of the accident?   Ans.   About 400
feet.

"(2) Q.   At or about the time the engine of the de-
fendant's train was crossing the house-track switch
was the plaintiff driving between Cal Owens's wagon
and the main track of defendant's railroad?   A. Yes.

"(3) Q.   What was the distance from the north rail

31—77 KAN.

of the main track of the defendant's railroad to where Cal Owens's wagon stood at the time of the accident? A. About eight feet.

"(4) Q. If you answer question No. 2 in the affirmative, what was the distance from the north side of the plaintiff's wagon to Cal Owens's wagon at the time the plaintiff was driving between it and the main track of defendant's railroad? A. About six inches.

"(5) Q. If you answer question No. 2 in the affirmative, what was the distance from the south side of the plaintiff's wagon to the north end of the ties of the main track of the defendant's railroad? A. Four inches.

"(6) Q. If you answer question No. 2 in the affirmative, was the plaintiff walking between his wagon and the north rail of the main track at the time the plaintiff was driving between Cal Owens's wagon and the main track? A. He was.

"(7) Q. If you answer question No. 6 in the affirmative, was the plaintiff walking upon the ties of the defendant's railroad at such time? A. Yes.

"(8) Q. If you answer question No. 2 in the affirmative, was the plaintiff during all of the time he was driving between Cal Owens's wagon and the main line of the railroad track in a position of danger? A. Yes.

"(9) Q. If you answer question No. 8 in the affirmative, did engineer Mason see the plaintiff in such position of danger? A. Yes.

"(10) Q. If you answer questions numbered 8 and 9 in the affirmative, how far was the engine of train No. 27 from the plaintiff when engineer Mason first discovered plaintiff's danger? A. About 400 feet.

"(11) Q. If you answer questions numbered 8 and 9 in the affirmative, in what distance could engineer Mason, by the exercise of such diligence as an ordinarily prudent person would have used under the same or similar circumstances, have stopped the train after he had discovered plaintiff's dangerous position? A. From 225 to 250 feet.

"(12) Q. If you answer question No. 8 in the affirmative, was it possible for the plaintiff to have extricated himself from such position of danger before the collision occurred? A. No.

"(13) Q. If you answer question No. 8 in the affirmative, and question No. 12 in the negative, did it reasonably appear to engineer Mason, when he first

saw plaintiff in such dangerous position, that the plaintiff could not extricate himself from such position of danger before the collision occurred? A. Yes.

"(14) Q. Did engineer Mason use such diligence as an ordinarily prudent person would have used under the same or similar circumstances to avoid injury to the plaintiff? A. No."

In addition to the special findings, the jury returned a general verdict in favor of the plaintiff for $2000. The motion for a new trial was denied, and judgment was accordingly rendered.

*M. A. Low,* and *Paul E. Walker,* for plaintiff in error.

*J. T. Reed,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: Error is assigned under three heads: (1) Overruling the demurrer to plaintiff's evidence. (2) Refusal to instruct the jury to return a verdict for defendant. (3) Denying the motion for a new trial. The only grounds for reversal urged are aimed at the weakness of plaintiff's evidence—in that it shows contributory negligence—and error in giving and refusing instructions.

If, then, the plaintiff's evidence be taken as true, and all reasonable inferences which may be drawn therefrom favorable to the plaintiff fairly tend to establish every fact essential to his right to recover, the demurrer to the evidence and the request for an instructed verdict were properly overruled; and if there was no reversible error in the instructions given, or in refusing to give those requested, the motion for a new trial also was properly denied.

We have read the evidence bearing upon the question of Clinkenbeard's negligence and observe that it differs considerably from the evidence upon the former trial. In instances where witnesses who had testified before modified or changed their statements, the at-

tention of the court and jury was called to the fact on cross-examination. Under such circumstances it is the province of the jury to determine the real fact, and, after their determination has been approved by the trial court, it is conclusive of the fact in this court.

The principal contention of the railway company is that Clinkenbeard's own testimony, as well as that of the witnesses produced by him, shows that he was guilty of contributory negligence. Clinkenbeard testified that just before he took up his lines to drive out between the obstructions and the main railroad track he stepped upon the main track and looked and listened for a train, but could neither see nor hear any; that he could see about half a mile to the east, the direction from which the train came; that after he started to drive out he did not look in that direction until some one shouted to him, when he glanced back and saw the engine within forty or fifty feet of him. The engineer testified that when his train was a half-mile east of the depot he was running forty-five to fifty-five miles per hour, and that he slowed down to twenty or twenty-five miles per hour by the time he reached the house-track switch, which the jury found was about 400 feet from where the accident occurred. So it appears to have been only about a minute from the time the train could have been seen till the accident occurred.

We cannot say, as a proposition of law, that Clinkenbeard was bound to anticipate as great danger and was bound to as great a degree of care in driving between the obstructions and the track as he would have been had he been about to cross the track. It is also apparent that the difficulties of driving the heavily loaded wagon, lengthened out as it was, through the narrow passage were so great that, in the opinion of the jury, it may have been nearly impossible for Clinkenbeard to divert his attention to anything else. If the evidence permits but one conclusion as to the conduct of Clinkenbeard, the question of his negligence is one of law; if, on the other hand, different minds might

reach different conclusions in reference thereto, it was for the jury to determine. (*Kansas Pacific R. Co. v. Butts,* 7 Kan. 308; *Dewald v. K. C. Ft. S. & G. Rld. Co.,* 44 Kan. 586, 24 Pac. 1101.) We cannot say the court erred in submitting the case to the jury, who determined this question in favor of Clinkenbeard.

As to the negligence of the engineer there can be no question, unless his testimony be accepted that Clinkenbeard was four or five feet from the north rail of the main track until the engine was within forty or fifty feet of him, when he came close to the rail, and that at the speed the train was moving it required a distance of 225 to 250 feet in which to stop it. Other witnesses testified that Clinkenbeard was walking upon the ends of the ties from the time the engine passed the house-track switch, which was 300 to 400 feet from the place of the accident. The jury evidently found that the defendant was guilty of negligence, and that Clinkenbeard was not guilty of such negligence as barred his right of recovery, under the eighth instruction given by the court. It reads:

"Ordinarily an engineer who sees a person on or dangerously near a railway track, in front of his moving train, is not bound to stop his train, but he has the right to assume that such person will get out of such dangerous position in time to avoid a collision and injury. If, however, such person is in a position of danger, and there are obstructions or other conditions which render it impossible for such person to get out of such dangerous position in time to avoid a collision and injury to himself, and the engineer in charge of such train saw him in such position of danger, or, by the exercise of reasonable care and diligence, should have seen him in such dangerous position in time to have stopped his train and avoided a collision, the engineer is in such case required, after discovering such person's perilous position and his inability to get out of such place of danger in time to avoid a collision, to use ordinary and reasonable care and diligence to avoid a collision and injury to such person.

"And if you find from the evidence in this case that the plaintiff herein, at and shortly before the collision

in question, was in a position of danger while walking along or upon defendant's railway track, or while driving his team along near said track, and that the plaintiff at such times used reasonable and ordinary care and prudence to avoid injury to himself, and that the engineer then and there in charge of the said engine of said defendant's railway-train in question saw the said plaintiff in such position of danger, if he was in a dangerous position, or should by the exercise of reasonable and ordinary diligence have seen him in such position in time, by the exercise of reasonable and ordinary diligence on his part, to have stopped his train and avoided the collision and injury to the plaintiff, if any, and that such engineer failed to do so, and such failure, if any, upon his part was the direct and proximate cause of the injuries, or any of the injuries complained of by the plaintiff herein, and proved by the greater weight of evidence, if such has been so proved, then in such case you should find for the plaintiff."

This instruction, except perhaps for the qualification referred to later, appears to be in accord with the principles enunciated in *Dyerson v. Railroad Co.*, 74 Kan. 528, 87 Pac. 680, and the numerous authorities there digested. Read in connection with the other instructions given, it places two propositions prominently before the jury: First, if the plaintiff was guilty of negligence which contributed to his injury he cannot recover; second, even if the plaintiff was guilty of negligence in driving into a perilous place, but thereafter exercised due care to protect himself, and the engineer, in time to avoid the accident, saw or should have seen that plaintiff was in peril and that he probably could not extricate himself therefrom, and the engineer then failed to exercise diligence in stopping the train, the plaintiff should recover. In other words, if the negligence of both the plaintiff and the engineer contributed, as proximate causes, to the injury, the plaintiff could not recover; but if, of the two causes, the engineer's negligence only was proximate, the plaintiff could recover.

As before suggested, the evidence is conflicting, but there is sufficient in support of plaintiff's claim to sustain the verdict. The conflict in the evidence is not as to the time when the engineer first saw Clinkenbeard but as to where he was when the engineer first saw him. The engineer testified, in part, as follows:

"Ques. Was n't it in as plain sight as Mr. Clinkenbeard was? Ans. Mr. Clinkenbeard was nearer the track than the wagon was.

"Q. He backed over there? A. He was walking on the south side of his wagon on the north side of the track.

"Q. And his wagon was five feet north of him just before you hit him? A. I should judge it was about that.

"Q. At the time you hit him? A. It come up closer to the track when I hit him; the team had drawed it over; you were talking about when I first noticed him.

"Q. When you arrived at the house-track switch you saw Mr. Clinkenbeard? A. Not particularly.

"Q. You saw the man you afterward hit? A. No, sir; he had n't got out there close enough for me to notice him any more than any of the rest of the teams.

"Q. You saw the man that you afterward found out was Clinkenbeard? A. Not at the house-track switch; I might have saw him, but I did n't take any more notice of him than I did of anybody else.

"Q. I am asking you whether you saw Mr. Clinkenbeard, the man that you afterward hit—whether you saw that man in there at the time you crossed this switch? A. If I did, I did n't notice him particularly.

"Q. Did n't you say that you saw everything that was in the yards? A. Yes, sir; I expect I saw him.

"Q. If he was in the yards you saw him? A. I expect I saw him if he was there.

"Q. At the time you passed this house-track switch, in whatever position he was in you saw him, did you? A. Likely did."

Other witnesses testified that the south wheels of Clinkenbeard's wagon were, at all times after the train was at the house-track switch, within four to six inches of the ends of the railroad ties, and that Clinkenbeard was between the wagon and the rail. The jury found

the distance from the south wheels of Clinkenbeard's wagon to the end of the ties to have been four inches at the time the engine was at the house-track switch. It does not appear, therefore, that the qualification "or, by the exercise of reasonable care and diligence, should have seen him in such dangerous position in time to have stopped his train and avoided a collision," etc., in the eighth instruction, above quoted, was prejudicial, even though erroneous.

We have considered the other questions presented and find no prejudicial error.

The judgment of the district court is affirmed.