No. 25,232.

IDA MORLAN, *Appellee,* v. SUSIE HUTCHINSON-HYATT, Guardian of CARLOS HUTCHINSON, a minor, and CARLOS HUTCHINSON, *Appellants.*

SYLLABUS BY THE COURT.

1. WRONGFUL DEATH—*Motion to Make Petition More Definite and Certain Not Erroneously Overruled.* In an action by a widow for damages for the wrongful death of her husband, the petition examined and *held,* not error to overrule a motion to make it more definite and certain.

2. SAME—*Refusal to Permit Amendments to Petition and to Refuse Evidence of Compromise and Settlement Not Error.* Under the facts stated in the opinion, it was not error for the court to refuse defendants' permission, during the trial, to amend their answer, setting up an alleged settlement or compromise of the claim in controversy. Nor was it error to refuse an offer by defendants to prove a settlement or compromise by cross-examination of the plaintiff.

3. SAME—*Evidence—Question of Facts for Jury.* The evidence examined and held to have been sufficient to require submission of the case to the jury.

4. SAME—*Deceased Intoxicated—Lying in Public Road—Struck by Defendants' Automobile—Proximate Cause—Last Clear Chance.* In an action for damages for wrongfully causing the death of one by running over or striking him with an automobile in a public road, although the evidence may show that the negligence of the deceased, in lying in the road in the first instance contributed toward his injury, yet, if there is evidence tending to show that the driver of the automobile which caused the death saw deceased in the position of danger, from which he could not extricate himself, or, by the exercise of reasonable diligence, should have seen him in time to stop or to avoid running over or striking him, the proximate cause of the death is one of fact for the jury.

5. SAME—*No Error in Record.* Various assignments of error considered and held not to be well-founded.

Appeal from Chautauqua district court; ALLISON T. AYRES, judge. Opinion filed May 10, 1924. Affirmed.

*J. E. Brooks,* and *R. O. Robbins,* both of Sedan, for appellants.

*W. H. Sproul,* and *C. W. Spencer,* both of Sedan, for appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover damages for the wrongful death of plaintiff's husband. Plaintiff recovered and defendants appeal.

The testimony shows, substantially, that plaintiff, her husband and family resided on a farm about three miles west of Hewins

Morlan v. Hutchinson.

in Chautauqua county; that, on the morning of December 11, 1920, the husband started from home to Hewins on a horse, taking some meat for his mother who was at Roy Savage's place on the road to Hewins; that when he reached Savage's place he found Grant Hutchinson; from liquor there obtained he and Grant Hutchinson became intoxicated; that he rode his horse into Hewins about a mile to get Carlos Hutchinson, son of Grant Hutchinson, to come out for his father. Having found Carlos, the two returned in a Hudson speedster touring car which weighed 2,800 or 3,000 pounds. Grant Hutchinson, in an intoxicated condition, was loaded into the car and taken by Carlos Hutchinson to Hewins; that the deceased mounted a large horse on which he rode to within a short distance of the city limits of Hewins, when he either fell or slid off and lay in the road; that he was seen on the horse by a witness, Grace Chappel, a brief time before he got off, and was next seen lying in the road; that Chappel went to him from his house near by, and attempted to help him up; that he had some conversation with him in which the deceased said, among other things, "Leave me alone a little while, I will be all right;" that Chappel returned to his house to telephone for help, and while so doing the defendant, Carlos Hutchinson, returned in his automobile at a high rate of speed, running over or striking the body of the deceased as he lay in the road, inflicting such injuries that he never regained consciousness and from which he died the next day; that he was a healthy, strong man, thirty-six years of age, 5 feet 9 inches in height, weighing 196 pounds two weeks before his death; that he left surviving him his widow, the plaintiff, together with six children, ages ranging from three to fourteen years; that he provided for his family by doing farm or public work making from $40 to $70 per month; that his life expectancy was 31.7 years. The defendant denied running over or striking the deceased with his car but the jury resolved the disputed question in favor of the plaintiff.

In addition to a general verdict of $10,000 against defendants, the jury answered special questions as follows:

"1. Do you find that the deceased Jess Morlan was intoxicated at the time of the accident? A. Yes.

"2. Do you find that the deceased, Jess Morlan, was lying in the center of the road, or near the center of the road at the time of the accident? A. Yes.

"3. At what rate of speed was the car driven by the defendant traveling just prior to the accident? A. 40 mi.

"4. Did Carlos Hutchinson do all that he could do to prevent the accident after he discovered the body in the road?  A.  No.

"5. If you answer question No. 4 in the negative then state what he could have done that he did not do to prevent the accident.  A.  Changed course. Applied brakes.

"6. Of what act or acts of negligence do you find the defendant guilty of? A.  Excessive speed.  Not carefully observing the road ahead.

"7. Was the act of the deceased Morlan of lying in the road the act of an ordinary, prudent person?  A.  No.

"8. Would the accident have happened, had not the deceased Morlan been lying in the road?  A.  No.

"9. Did the deceased Morlan fall from a horse shortly before the accident? A.  No.

"10. Was the condition of the deceased Morlan such at the time he mounted the horse, that it was unsafe for him to ride said horse?  A.  Yes.

"11. How far beyond the body did the car go before stopping?  A.  12 feet."

It is contended by the defendants that the court erred in over-ruling a motion to require plaintiff to make her petition more definite and certain.  A previous motion to strike out certain matters had been sustained.  The petition, among other things, alleged, in general terms, that the deceased was thirty-seven years old at the time of his death; that prior thereto, he was a strong, able-bodied, healthy, industrious, young man who supported his family which consisted of his wife, and six children between the ages of 2 and 13 years; that he was their sole support; that he was continuing to work and labor for their benefit and would have continued so to do had he not been killed, as alleged.  While the court would have made no mistake in requiring plaintiff to set out, with more detail, what the deceased could have earned and what his expectancy was, it cannot be said that the court abused its discretion or that the defendants were in any way prejudiced by the court's refusal so to do.

Complaint is made of refusal of the court to permit the defendants to amend their answer at the time of the trial and introduce testimony to show that the defendants had paid certain bills for the plaintiff and provided her a home.  The record shows that after the examination of several witnesses, when plaintiff was on the stand, the defendants endeavored to show, as a part of her cross-examination, that payments were made to her as consideration for any claim she had against them.  It was rejected as irrelevant under the issues and as not proper cross-examination.  The court held that any amendment to the pleading putting a compromise in issue

Morlan v. Hutchinson.

should have been considered and disposed of before the trial. The record discloses no offer to prove a compromise or settlement as a part of the defense. Under all the circumstances it was not error for the court to refuse the offer as made.

It is contended by the defendants that the evidence of negligence of the defendant was so meager that a demurrer to the evidence should have been sustained. There was ample testimony to warrant submission of the case to the jury and to support the findings that the defendant, at the time of the accident, was driving the car at 40 miles an hour, and that he did not do all that he could have done to prevent the accident.

The plaintiff submitted the case upon the doctrine of the last clear chance. It was contended that, although the deceased was guilty of negligence in voluntarily becoming intoxicated, and in the position in which he lay in the road, nevertheless, the defendant was liable because he was in position to observe his helpless condition, and was bound to do what a reasonable person would do under the circumstances to avoid the injury, and failing to do so, was guilty of the negligence which was the proximate cause of the injury. It was not a case of concurrent negligence, as contended by the defendants. The deceased, in the first instance, although intoxicated, realized the condition of the elder Hutchinson and rode a mile into town to procure assistance for him. His unsuccessful attempt afterwards to ride the large horse into town resulting in his being left prostrate in the road contributed to his injury. In all human probability he would not have been injured had he not become intoxicated, and likely would not have been injured had he not tried to ride the horse. His negligent acts, however, so far as he was able to exercise control over the situation, had passed at the time of the injury, for he was not in a condition to save himself from being run over. On the other hand, the defendant, Carlos Hutchinson knew the condition of the deceased, else he would not have returned to the scene for the purpose of taking him to town. He returned alone. The deceased was lying across the road in such a position that Hutchinson, in approaching him could have seen him for a distance of 200 feet. In the trial he denied that he ran over or struck the body of the deceased with his car. The facts and circumstances do not support his denial.

This testimony by various witnesses:

"Q. Driving very fast, was he? What is your judgment? A. About 40 miles to the hour.

"Q. And around the bend in the road how fast was he going? A. He came just about the same all the way from the time I saw him.

"Q. Until he came to the body of Morlan? A. Yes, sir; never checked his car.

"Q. Did you see him when he reached Morlan? A. Yes, sir.

"Q. What took place? A. I couldn't hardly tell you. It was all done so quick.

"Q. Did he drive on the body or over the body? A. I couldn't tell whether he drove over the body or not. It was done in too big a hurry for me to tell.

. . . . . . . . . . . . . . .

"Q. Did you hear him say anything at that time? A. Yes, sir.

"Q. What did you hear him say? A. I asked him if he ran over the body. I said 'You ran over the man, didn't you?'

"Q. What did he say? A. Well, he used some kind of rough language.

"Q. Please use the same if you can. A. He said, 'No, I didn't, but I wish I had run over the d——d s—— o— a b——.'

"Q. And then what did Hutchinson do? A. Mr. Chappel came and I think they went to the body. Left the car. And I went in the house.

"Q. Describe to the jury the position of the body in the road after the automobile ran over him? A. I never saw the body after the car hit the body from my view after it passed. I never saw the body any more.

. . . . . . . . . . . . . . .

"Q. Did you see the car when it reached the body? A. Yes, sir.

"Q. Did you see whether or not the car ran over the body? A. No. I couldn't say it did, but the body moved during the time the car passed.

. . . . . . . . . . . . . . .

"Q. Did you hear Hutchinson make any statement in regard to the occurrence at that time? A. No, he come up the road and I met him and he said he had run over Jess Morlan, the s—— o— a b———, and killed·him, and we got in my car and started back up the road, I and two girls and him, and he said he didn't run over him, he was just kidding us.

"Q. He told you at first that he had? A. Yes, sir."

Witnesses who did not see the accident but who afterwards examined the clothing worn by the deceased, testified that there was a strip of mud across the breast and right arm about three inches wide extending clear across the body.

"Q. Did you examine the body of Jess Morlan after his death? A. Yes, sir.

"Q. How soon after? A. I don't remember, 2 or 3 days.

"Q. State to the jury the condition you found the body in. A. I noticed there was a bruise on one arm, I think the right arm, and his neck and throat was bruised up under the chin. That is all I remember at this time."

The testimony showed that a few minutes before the accident, the deceased had talked with Grace Chappel who attempted to

Morlan v. Hutchinson.

assist him; that, at that time, there was no blood or other indications of injury, but that immediately after Carlos Hutchinson came in his car the deceased said nothing—was unconscious—that blood ran from his nose and mouth. Before Carlos came in the car, deceased was lying on his back, head to the south and feet to the north. Immediately after, he was lying on his face, head to the west.

It is not necessary to analyze the numerous cases in which the doctrine of the last clear chance has been enunciated. It is a humane doctrine, firmly established in this state. In discussing it, in *Atherton v. Railway Co.*, 107 Kan. 6, 8, 190 Pac. 430, the court said:

"However, the rule (of last clear chance) is so firmly fixed in this state and so thoroughly supported by the great weight of authority that it cannot now be changed. In *Railway Co. v. Arnold*, 67 Kan. 260, 72 Pac. 857, the deceased was riding a bicycle, and on going down an incline on smooth asphalt pavement to a street on which a car was running and with which he was about to collide, he turned eastward parallel with the car, and after reaching some rough pavement was thrown from his bicycle in front of the moving car, carried some distance and killed. It was claimed that contributory negligence barred recovery. It was also argued that although the negligence of the deceased contributed to the collision, yet if the motorman saw him in a position of danger, or by the exercise of reasonable diligence should have seen him, in time to stop the car before killing him, the defendant was liable. "This theory was adopted and followed after full consideration. This decision was adhered to after a most thorough-going examination in *Dyerson v. Railroad Co.*, 74 Kan. 528, 87 Pac. 680, and these two decisions were approved and followed in *Springer v. Railroad Co.*, 95 Kan. 408, 148 Pac. 611. The same rule was announced in the Dyerson case and followed in *Railway Co. v. Clinkenbeard*, 77 Kan. 481, 94 Pac. 1001, and all three were approved and followed in *McMahon v. Railway Co.*, 96 Kan. 271, 150 Pac. 566. In these decisions the doctrine was so carefully gone into and so clearly stated that mere reference thereto is sufficient."

The doctrine of the last clear chance is applicable to the facts in this case. The defendant had the last clear chance to avoid the accident. He saw or could have seen the deceased lying in the road when 200 feet distant. Whether the man lying there was the one known to be intoxicated or some one else who, because of illness or for any other reason, was lying in the road, it was the duty of the defendant, either to turn out and go around, or to stop his car. By the exercise of reasonable care he could have done either after coming in sight of the prostrate form. See, also, *Welsh v. Railway Co.*, 148 Iowa 200; *Zitnik v. Union Pacific R. Co.*, 91 Neb. 679; *Straus v. Railroad*, 166 Mo. App. 153.

Complaint is made of some of the instructions given and refusal to give others, and that the court erred in refusal to enter judgment for the defendants on the answers to special questions. These and other alleged errors have been considered but none have been found to warrant a reversal. The general charge to the jury was sufficient. The special questions were fairly answered by the jury, were supported by sufficient evidence, and were not inconsistent with the general verdict.

The judgment is affirmed.