No. 30,862.

CHARLES G. SPENCER and JOHN DALE SPENCER, HAROLD WAYNE SPENCER, WILLIAM RUSSELL SPENCER and CHARLES ROBERT SPENCER, by CHARLES G. SPENCER, Their Next Friend, *Appellees,* v. KANSAS CITY PUBLIC SERVICE COMPANY, *Appellant.*

(22 P. 2d 425.)

Opinion filed June 10, 1933.

*Edwin S. McAnany, Maurice L. Alden* and *Thomas M. Van Cleave,* all of Kansas City, and *Charles L. Carr,* of Kansas City, Mo., for the appellant.

*David F. Carson,* of Kansas City, *Paul G. Koontz, Spencer F. Harris* and *Harry F. Murphy,* all of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages for death by wrongful act.

The plaintiffs are the husband and children of Nina Norene Spencer, who died from injuries in the accident which gave rise to this lawsuit.

Strong avenue in the Argentine section of Kansas City is an arterial highway running east and west and paved forty feet wide between curbs and is intersected by Thirtieth street, which is paved twenty-two feet wide between curbs in its general course, the pavement being widened to about forty-five feet as it approaches the south curb line of Strong avenue. The defendant company has a double line of car tracks on Strong avenue, and there are no tracks on Thirtieth street running north and south at the Strong avenue intersection. Strong avenue is a designated arterial highway, and on the east side of Thirtieth street just south of the intersection is a stop sign.

On October 9, 1930, Nina Norene Spencer started to a grocery store in the family automobile, which was operated and driven by her fourteen-year-old son William. They came north on Thirtieth

street and stopped at the stop sign, at which time a car of the defendant was coming east on the south track. They started north across the intersection, and a collision occurred, as a result of which Mrs. Spencer received injuries from which she died.

Plaintiffs' petition alleged their version of the facts and charged defendant with negligence in that the motorman, Bowlin, (1) did not keep the street car under control; (2) did not keep a careful watch for cars crossing defendant's track at the point of collision; (3) failed to apply the brakes or give a signal in time to avert the collision; and—

(4) "that the operator saw, or by the exercise of ordinary care could have seen, Nina Norene Spencer in a position of peril, or about to enter a position of peril, from which she could not extricate herself, so that with the appliances at hand he could have averted striking her, but failed to avoid doing so."

Defendant's answer, so far as necessary to detail here, alleged that at the time of the accident Mrs. Spencer was in an automobile driven by her son William, who was her agent and acting pursuant to her directions; that Strong avenue is an arterial highway; Mrs. Spencer, without keeping a careful watch for street cars, crossed the car tracks when a car was approaching and a collision occurred; that Mrs. Spencer and her son saw, or by the exercise of ordinary care could have seen, the street car in time to have stopped the automobile before entering on the track, and that the automobile before entering on the track gave no signal of its occupants' intention to do so in time to have enabled the motorman to stop. Ordinances of the city fixing age of an automobile driver, speed limits and traffic regulations and their violation by Mrs. Spencer and her son were also alleged. One of these ordinances, about which there was no dispute, gave the right of way to the defendant's cars, and the court so instructed the jury.

At conclusion of the plaintiffs' case, the defendant entered its demurrer to the evidence, which demurrer was overruled. The trial proceeded, and at its conclusion requests for certain instructions were denied, and special questions were submitted. A general verdict in favor of plaintiff, and answers to the special questions were returned as follows:

"Q. 1. How many feet west of the east property line of Thirtieth street, south of its intersection with Strong avenue, did the collision between the street car and the motor car occur? A. Twenty-six feet.

"Q. 2. At the time of the collision, where were the front wheels of the

motor car with reference to the south rail of the eastbound track? A. Four feet north.

"Q. 3. At what rate of speed, in miles per hour, was the automobile going at the time of the collision? A. Five miles.

"Q. 4. Did the motor car make the arterial highway stop at or near the official arterial highway stop sign on the south side of the intersection? A. Yes.

"Q. 5. When the front wheels of the motor car were on the dividing line of the concrete pavement on Thirtieth street and the brick pavement on the south side of Strong avenue, did Billy Spencer, the driver, see a street car approaching from the west? A. Yes.

"Q. 6. If you answer the foregoing question 'Yes,' state: (a) How many feet west of the point of collision was the front end of the street car when Billy Spencer saw it? (b) At what rate of speed in miles per hour was the street car approaching the intersection of Thirtieth and Strong? A. (a) 150 to 175 feet. (b) Twenty-five miles per hour.

"Q. 7. From the time Billy Spencer first saw the street car approaching the intersection until the time of the collision, at what rate of speed in miles per hour did the street car run, up to the instant of the collision? A. Twenty-five miles up to intersection of Thirtieth and Strong.

"Or, if you find that the street car ran at different speeds during that time, state what the speeds were and the rate of speed at which the street car ran at the different points. A. From point of intersection of Thirtieth and Strong, fifteen miles per hour.

"Q. 8. At what rate of speed, in miles per hour, did Billy Spencer drive his motor car from the time the front wheels crossed the dividing line between the concrete and brick pavement on the south side of Strong avenue until the instant of collision? A. Five miles per hour.

"Q. 9. Within how many feet, going from five to six miles per hour, could Billy Spencer have stopped his motor car in the intersection on the day of the accident? A. Three feet.

"Q. 10. Within what distance could a 200-type street car, weighing about 49,000 pounds and about 49 feet in length, be stopped while running on Strong avenue on the day of the accident, while going at the rate of from: (a) Thirty to thirty-five miles per hour, if you find the street car could proceed on a level track at that rate of speed; (b) twenty to twenty-five miles per hour; (c) eighteen to twenty miles per hour; (d) fifteen to eighteen miles per hour? A. (a) Ninety to 105 feet; (b) sixty to seventy-five feet; (c) fifty-five to sixty feet; (d) forty-five to fifty-five feet.

"Q. 11. After the time the front wheels of the motor car crossed from the concrete pavement to the brick pavement on the south side of Strong avenue, until the front wheels touched the south rail of the eastbound track, did Billy Spencer look to the west and see the eastbond street car approaching? A. Yes.

"Q. 12. If you answer the last question 'Yes,' when he looked: (a) How far were the front wheels of his motor car from the south rail of the eastbound track? (b) How far was the front end of the street car from the point of collision? (c) At what rate of speed in miles per hour was the street car then moving east? A. (a) One foot. (b) Thirty to thirty-five feet. (c) Twenty-five miles per hour.

"Q. 13. If you find a verdict for the plaintiff, state specifically each act of negligence of which you find the defendant guilty. A. He failed to exercise the highest degree of care, in that he did not have car under control, and did not apply emergency until center of intersection of Thirtieth and Strong."

Defendant's motions to set aside the verdict, to set aside certain answers to the special questions and for judgment notwithstanding the verdict and for a new trial were denied, and defendant appeals.

There was no dispute in the evidence that Mrs. Spencer was being driven by her son, William Spencer, as her agent and under her supervision and direction, and the court properly instructed the jury that if the driver were guilty of negligence then Mrs. Spencer was liable to the same extent as though she were the driver of the automobile.

It is settled by the answers to the special questions that Billy Spencer, just before he entered Strong avenue, saw the street car 150 to 175 feet to the west approaching the intersection at twenty-five miles per hour, and that he looked again when within one foot of the south track when the car was thirty to thirty-five feet away and coming at the same speed. No question was submitted thereon, but Billy testified that he didn't look to the west in the meantime. It is further settled that he was going forward from the time he stopped at the stop sign until the moment of collision at five miles per hour and could have stopped any time within a distance of three feet. There seems no room to question the conclusion that William Spencer was guilty of negligence which, to say the least, contributed to the accident. And this negligence is practically admitted by the allegations of the petition which invoke the doctrine of last clear chance, upon which doctrine and theory under the instructions the case was submitted to the jury. The only question which needs to be considered then is whether or not the doctrine applies.

In *Jamison v. Atchison, T. & S. F. Rly. Co.*, 122 Kan. 305, 262 Pac. 472, this court said:

"This doctrine can be invoked in negligence cases only where the party relying upon it has by his own prior negligence gotten himself into a predicament from which his subsequent diligence will not avail to extricate him without injury or damage through the act or delict of another party, but where such other party has a fair opportunity—a last clear chance—to avert or minimize the accident, injury or damage, by the exercise of reasonable diligence after the negligence of the first party has ceased." (p. 308.)

In the recent case of *Goodman v. Kansas City, M. & S. Rld. Co.*, 137 Kan. 508, 512, 21 P. 2d 322, the doctrine was said to be made up of the following elements:

"(1) Plaintiff, by his negligence, placed himself in a position of danger; (2) that his negligence had ceased; (3) that defendant, seeing plaintiff in a position of danger, or by the exercise of due care should have seen him in such position, by exercising due care on his part had a clear chance to avoid injuring plaintiff; (4) that defendant failed to exercise such due care; and (5) as a result of such failure plaintiff was injured."

For a discussion of the last-clear-chance doctrine see 20 R. C. L. 142, 25 R. C. L. 1258, 45 C. J. 984 *et seq.* and 60 C. J. 527.

Considering the evidence and measuring it by the above rules, we find (1) Mrs. Spencer and her son by their own negligence placed themselves in a position of danger; (2) that their negligence did not cease but continued up to the time of the accident; (3) and (4) that plaintiffs were proceeding across the intersection at the rate of five miles per hour and could have stopped at any time within three feet; that until they reached a point within four or five feet of the south track the motorman had a right to believe they would stop and give him the right of way both as required by the provisions of the traffic ordinance and as good judgment on their part would demand. At the relative speeds of the two vehicles, when the front of the automobile was five feet from the south rail and still in a place of absolute safety the street car was forty to forty-five feet to the west and coming at twenty-five miles per hour. The automobile came onto the tracks, and the street car, under the answers as to distances in which it could stop, could not be stopped in time to avoid a collision. (5) Mrs. Spencer was injured, but the proximate cause of her injury was her failure to stop when in a position of absolute safety and when the danger of proceeding must have been perfectly obvious to anyone looking out for his own safety.

In order to avoid the consequences of Mrs. Spencer's failure to stop, it is argued that the motorman saw the automobile approaching and knew it would be in a position of peril and that it was his duty to stop, and *Morlan v. Hutchinson,* 116 Kan. 86, 225 Pac. 739, is cited in support. The case is not in point. There the driver of a car had an opportunity to see a man lying drunk in the road, but negligence of the drunken man had ceased, however, before the driver of the automobile saw him.

In *Muir v. City Railways Co.,* 116 Kan. 551, 227 Pac. 536, the facts are materially different from those in this case. In the Muir case, it was found that the street car could have been stopped after the plaintiff's dangerous position was known to the motorman.

In *McMahon v. Railway Co.,* 96 Kan. 271, 150 Pac. 566, a judg-

ment for the defendant on the answers to special questions was reversed, this court holding that the doctrine of last clear chance forbade a judgment. Under the facts it was held that the injury occurred, not from the concurring negligence of the plaintiff and defendant, but from the continuing negligence of the defendant. ·

So far as the record before us shows, the question of continuing negligence of the defendant, or wantonness on its part, was not raised, either by the pleadings or by requests for special instructions thereon, and the only evidence which would have tended to sustain such a contention has to do with just how soon the motorman applied the emergency brakes. It could not be successfully maintained under the answers to the special questions that the motorman could have stopped the car after he once knew that Mrs. Spencer was going ahead on the tracks and was not going to stop her automobile while it was still in a safe position, especially in view of the fact that the street car had the right of way and was running at a good rate of speed, and the Spencer automobile was going so slowly it could have been stopped within three feet. As has been shown, when the automobile was five feet from the south track, the street car was approximately forty feet to the west coming at twenty-five miles per hour, at which speed the jury found it could be stopped in seventy-five feet. Assuming that the motorman should then have known the automobile would not stop and had started to stop the car, he could not bring it to rest until it had proceeded seventy-five feet. Forty feet were consumed to the point of collision, and thirty-five feet would be left. No special question was submitted, but plaintiffs' evidence showed the street car stopped about twenty feet east of a certain catch basin, and by reference to the plats offered as exhibits that point would be thirty-five to forty feet east of the point of collision. It would appear that the motorman was not guilty of any continuing negligence.

It must be held that under the facts the doctrine of last clear chance is not applicable. Rather, this case is controlled by the facts and reasoning in *Goodman v. Kansas City, M. & S. Rld. Co.*, supra; *Keuchenmeister v. Wichita Transportation Co.*, 137 Kan. 344, 20 P.' 2d 457; *Gardner v. Topeka Rly. Co.*, 123 Kan. 262, 255 Pac. 83, and others cited therein.

The plaintiffs' intestate was guilty of contributory negligence which precludes a recovery by them, and the cause is remanded with instructions to render judgment for the defendant.