No. 23,149.

EARLE R. GILBERT, as Administrator of the Estate of JOHN
MORRIS, Deceased, *Appellee,* v. THE KANSAS CITY RAILWAYS
COMPANY, *Appellant,* et al.

### SYLLABUS BY THE COURT.

NEGLIGENCE—*Collision—Street Car and Automobile—Contributory Neg-
ligence Bars Recovery.* The death of plaintiff's intestate resulted
from a collision between a street car of the appellant and an auto-
mobile truck upon which he was riding as a passenger, standing on
the running board. In an action against the street-railway company,
the special findings are examined, and held to show contributory neg-
ligence on the part of the deceased which prevents recovery.

Appeal from Wyandotte district court, division No. 1; ED-
WARD L. FISCHER, judge. Opinion filed May 7, 1921. Re-
versed.

*E. S. McAnany, M. L. Alden,* and *T. M. Van Cleave,* all of
Kansas City, for the appellant.

*J. K. Cubbison,* and *Lee Judy,* both of Kansas City, for the
appellee.

The opinion of the court was delivered by

PORTER, J.: A collision between one of appellant's street
cars and an automobile on which John Morris was riding as
a passenger resulted in the death of Morris and in this lawsuit
to recover damages.

Quindaro boulevard in Kansas City runs, at the place of the
accident, east and west, and Seventeenth street crosses the
boulevard running north and south. The accident occurred
between 8 and 9 o'clock on a morning in July. The street car
was running west on Quindaro boulevard at a speed of about
thirty miles per hour. The automobile was a Ford truck
driven by the defendant, D. L. Fry. A man named Van Hooser,
with Fry and Morris had started to do some work in the
country. Van Hooser sat on the front seat to the right of
Fry, the steering wheel being on the left side. The deceased,
John Morris, was not in the automobile but was standing on
the left running board about eighteen inches behind Fry, and
was holding on with his hands, his face being toward the west.

The petition alleged that Morris's death was caused by the concurrent negligence of both the appellant and the defendant, D. L. Fry, the driver of the automobile. It was alleged that Morris was a passenger in the automobile, and that before crossing Quindaro boulevard and the tracks of the appellant, the driver halted the car and then proceeded southward across the street, and that the collision was caused by the negligent manner in which the street car was operated. However, on the trial, the plaintiff amended his petition and alleged that before the automobile reached the car tracks, Fry attempted to turn west on Quindaro boulevard. The distance between the north rail of the track and the curb line on the north side of Quindaro boulevard was twelve feet, so that the car could have been driven to the west and kept between the curb and away from the street car.

In answer to a special question the jury found that the collision occurred a little to the west of the center of Seventeenth street. The general verdict was against both the appellant and the defendant Fry and necessarily includes a finding that both were guilty of negligence. There was no special finding of what the specific acts of negligence were.

A store building stands at the corner of the boulevard and Seventeenth street and the front of the building is twenty-three feet from the north rail of the car track, so that a person standing on that side of the street even with the front of the store building can look east on Quindaro boulevard and see a street car for a distance of at least 200 or 250 feet, there being nothing to interfere with his vision except two telephone poles standing near the curb line.

The jury found that when the automobile was between eight or nine feet from the north rail of the car track the street car was from 200 to 250 feet east, coming at a rate of thirty miles per hour; and that the automobile from this point until the collision traveled a distance of twelve feet at a rate of eight miles per hour. The appellant contends that if the jury were correct in finding that the automobile was traveling eight miles per hour, then the street car, in order to travel a distance of 204 feet, necessarily had to be traveling seventeen times as fast as the automobile or 136 miles an hour, which, of course, was an impossible rate of speed for a street car.

Because of this inconsistency, it is insisted that the jury disregarded the testimony in part. We may ignore the apparent inconsistency of some of the findings with respect to the rate of speed and the distances, because in our view the case turns upon other special findings which establish the contributory negligence of the deceased.

Aside from the findings, there is no dispute over the fact that when the automobile was approaching the boulevard and was twenty-three feet north of the car track there was nothing to prevent Morris from looking east and seeing the street car approaching. He would have had ample time to have stepped off the running board and have avoided the collision.

Finding number four is as follows:

"When D. L. Fry in his car and John Morris standing on the east running board were within eight or nine feet of the north rail of the defendant railway company's track at the intersection of Seventeenth street and Quindaro boulevard, what was there, if anything, to prevent them seeing or hearing the approaching street car? Answer: Nothing."

Finding number 9 is as follows:

"Had John Morris looked east when the portion of the motor car Fry occupied was eight or nine feet from the north rail of the track, what was there to prevent him seeing the car and warning Fry of its approach? Answer: Nothing."

Finding number 10 is as follows:

"Had Morris looked east when the portion of the motor car Fry occupied was eight or nine feet from the north rail of the track, what was there to prevent Morris from seeing the car and stepping from the running board of the motor car before the collision? Answer: Nothing."

The deceased was required to look and listen for an approaching street car as much as was the driver. If he had discovered the approaching street car it would have been his duty to warn the driver. If by looking he could have discovered the approaching car and stepped from the running board in time to have avoided injury, and failed to do so, his contributory negligence prevents recovery.

It is appellant's contention that it is impossible that Fry, the driver of the automobile, was guilty of negligence without Morris also being guilty of contributory negligence, because Morris was in a better position to look and see an approaching street car from the east than was the defendant Fry. The appellee lays much stress upon the presumption that Morris exercised due care. Because of the natural love of life, the

instinct of self-preservation, and the disposition of all men to avoid injury, this presumption obtains in cases where evidence as to what actually occurred is lacking, but the presumption does not amount to proof. It is nothing more than a presumption, the force of which is destroyed at once by proof to the effect that the person injured or killed did not exercise due care. In this case, the presumption, if it could be said to have existed at all, is destroyed by the finding of the jury to the effect that if Morris had exercised due care— had looked—he would have seen the approaching car in time to have stepped from the running board and to have saved himself from injury.

The appellee argues that the rule applied to a pedestrian about to cross a street-car track is the one which controls the situation in which Morris was immediately before the collision. But obviously, a man walking on a street can take care of himself in an emergency much more readily than one riding in or upon an automobile driven by some one else, because he can step quickly to one side, or forward or backward as the situation may demand.

The jury found the appellant and the driver of the car both negligent. But it is inconceivable that Fry, who had not so good an opportunity to see the approaching car as had Morris, could be guilty of negligence and the man who was in the better situation to see and protect himself be free from contributory negligence.

The effect of the contributory negligence of the deceased cannot be minimized by laying stress upon the negligence of the defendant or by characterizing it as gross or wanton. Besides, gross or wanton negligence was not alleged in the petition.

The appellee seeks to avail himself of the doctrine of the "last clear chance," but because the negligence of Morris was in operation until the collision occurred that doctrine has no application. Besides, the question does not appear to have been presented to the trial court either by a requested instruction or otherwise.

The findings lead to but one conclusion, which is, that the negligence of Morris contributed to his injury and that the appellee is not entitled to recover.

The judgment is reversed and the cause remanded with directions to enter judgment in favor of the appellant.