No. 27,269.

NELLIE B. GARDNER, *Appellee*, v. THE TOPEKA RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. STREET RAILROADS—*Contributory Negligence—Care Required in Crossing Track.* In an action for damages for personal injuries sustained in a collision of a street car and an automobile driven by plaintiff, the record considered, and held that under plaintiff's testimony and the special findings of the jury pertaining thereto plaintiff was guilty of contributory negligence barring her recovery, and that judgment must be ordered for defendant.

2. SAME—*Contributory Negligence—Failure to Look for Car—Judgment Notwithstanding General Verdict.* When a person driving an automobile comes to a street crossing on which there is a street railway line, and sees a street car coming a short distance away, and she proceeds to drive her automobile across the railway track without paying attention to the approaching street car, where if at any time after she entered the street intersection she had looked she would have seen that a collision was inevitable unless she applied her brakes and stopped her car, and where she had sufficient time and dis-

Street Railroads, 33 Cyc. pp. 1527 n. 2, 1553 n. 38, 1555 n. 52, 1558 n. 62, 1606 n. 34, 1647 n. 46; 15 L. R. A. n. s. 259; 23 L. R. A. n. s. 1224; 28 A. L. R. 211, 229; 25 R. C. L. 1275.

tance in which to stop it in safety but failed to do so, she was guilty of contributory negligence which barred a recovery against the street car company notwithstanding the general verdict and other findings of the jury.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed April 9, 1927. Reversed.

*Thomas F. Doran* and *Clayton E. Kline,* both of Topeka, for the appellant.
*W. E. Atchison,* of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages sustained by plaintiff in a collision between defendant's street car and an automobile driven by plaintiff.

The collision occurred at the intersection of Van Buren street and Sixth street in Topeka, near the hour of midnight. Sixth street runs east and west, and Van Buren street runs north and south. Defendant's street car was running eastward on Sixth street, and plaintiff's automobile was going northward on Van Buren. Van Buren street is 40 feet wide, and Sixth street is 80 feet wide. Plaintiff testified that as she drove northward and when she was 25 feet south of Sixth street (62.3 feet south of the railway track), she saw the street car about 125 feet to 150 feet west of Van Buren, and as she reached the south curb line of Sixth street the car was about 50 or 75 feet west of Van Buren—30 feet, in her best judgment.

The street car and the automobile collided about 10 or 12 feet west of the east line of Van Buren; the street car was derailed; both cars traveled eastward, veered to the north, and came to a standstill side by side, the automobile being effectively halted by its right rear wheel being caught by an iron trolley pole in the middle of the street.

Plaintiff brought this action for damages for personal injuries sustained by her through the alleged negligence of defendant in running its street car at excessive speed, and—

"That said street car, without giving any notice, alarm, warning, or ringing of any gong, or any other signal or alarm, which either was, or could have been heard by plaintiff at the time, rushed upon the automobile and plaintiff, as the automobile was being driven across the track. That the motorman operating said car as the servant and employee of said company, at the time either saw, or could by the exercise of ordinary care, have seen the automobile approaching or crossing the track in ample time to have slowed down or stopped the street car before colliding with the automobile, which he carelessly and negligently failed to do. That if said company through its motorman, operating

said car, had been operating the street car at the rate of speed authorized by its franchise, or at a reasonable rate of speed, plaintiff would have had ample time to pass over the track before the street car reached the point of collision. That plaintiff was in the exercise of due care and caution at the time, and was driving the car at the rate of ten miles per hour."

Plaintiff also pleaded a certain traffic and speed ordinance, defendant's disregard of which contributed to the accident, injury and damage suffered by plaintiff.

Defendant answered with a general denial, traversed plaintiff's allegations of negligence, and alleged—

"That on or about the 24th day of May, 1925, at about 11:50 o'clock p. m., plaintiff was driving a certain Cadillac automobile north on Van Buren street, between Seventh street and West Sixth avenue, in the city of Topeka, Kansas, in a careless, negligent and wanton manner, without regard to her own safety or the safety of other persons or vehicles on said streets; and without looking or listening or taking any precaution whatsoever for the safety of herself or other persons or vehicles on said streets.

"That the force of the collision when the automobile struck the street car was so great 'that the street car was thrown off the rails, and the front or east end of the street car was turned around toward the north, so that when the street car and automobile came to a full stop, the street car was fronting towards the north alongside of the automobile which was then fronting to the north, about parallel with the automobile.'"   . . .

In other allegations of the answer, defendant also pleaded certain speed and traffic ordinances of the city and their violation by plaintiff which led to her injury:

"That said collision and injuries would not have occurred had not plaintiff negligently, recklessly and carelessly driven said automobile into the car of the defendant and on to its tracks, in violation of said ordinances of the city of Topeka hereinbefore described.

.  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Defendant further alleges that plaintiff not only failed to look and listen, but failed to observe and see said street car, which was then in plain sight and could have been seen and observed by her in time to have stopped or turned aside and thus have avoided the injury; and that her negligence in failing to do so contributed to said injury and was the proximate cause thereof."

Jury trial; demurrer to plaintiff's evidence and motion for a directed verdict overruled; general verdict for plaintiff; defendant's motion for judgment on the jury's special findings overruled; judgment for plaintiff; new trial denied; appeal.

Defendant assigns and urges a number of errors, the most serious

of which is involved in the overruling of its motion for judgment on the jury's special findings, to which we must give space, viz.:

"SPECIAL QUESTIONS SUBMITTED BY THE COURT.

"1. Were the injuries to the plaintiff the result of a collision for which neither the plaintiff nor the defendant were wholly responsible? A. Defendant wholly responsible.

"2. Did the plaintiff see the street car at all until about the instant of the collision? A. Yes.

"3. If you answer question 2 in the affirmative, state where the plaintiff was with reference to the south line of the south sidewalk crossing on sixth avenue when she first saw the street car, and where the street car was with reference to the west curb line of Van Buren street, when she first saw it. Please state distances in feet. A. (a) About 25 feet south of south curb line. (b) About 125 feet to 150 feet west of west curb line.

"4. If you find the plaintiff saw the street car a first time and locate the place from which she then saw it, state if she again looked and saw the street car, and if so, where she was at that time with reference to the south curb line of Sixth avenue on Van Buren street, and where the street car was at that time with reference to the west curb line of Van Buren street; stating distances in feet? A. (a) At the curb line. (b) 50 feet to 75 feet west of west curb line.

"5. If you find that the plaintiff looked and saw the street car a second time, please state if she again looked and saw the street car, and if so where she was with reference to the south rail of the south track of the railway company, and where the street car was at that time from the point of collision; stating distances in feet? A. (a) Yes. (b) In intersection on track. (c) About 10 to 12 feet west of east curb line on Van Buren.

"6. At what rate of speed was the automobile moving before entering the intersection, and at the time of the collision? A. 10 to 12 miles per hour.

"7. At what rate of speed was the street car moving before entering the intersection and at the time of the collision? A. About 25 to 30 m. p. h.

"8. If you find that the plaintiff saw the street car at all, at what rate of speed was her automobile moving: (a) When she first saw the street car? (b) When she saw it a second time, if you find she saw the street car a second time? (c) When she saw it a third time, if you find she saw it a third time? A. (a) 10 to 12 m. p. h. (b) 10 to 12 m. p. h. (c).

"9. In what distance could the plaintiff have stopped her automobile at the rate of speed she was traveling when and after she entered the intersection? A. About 15 feet.

"10. If you find the plaintiff saw the street car, did she travel at the same rate of speed from that time until the collision occurred? A. Yes.

"11. If you find the plaintiff saw the street car, state if the street car traveled at about the same rate of speed from the time plaintiff first saw it until the time of the collision? A. Yes.

"12. Did the plaintiff make any effort to slow down her automobile, stop

or turn aside, or do anything to avoid the collision? A. (*a*) No. (*b*) Turned slightly to right.

"13. State the location of the point of collision with reference to the east curb line of Van Buren street; stating distances in feet? A. 5 feet to 8 feet west of east curb line.

"14. What caused the street car to leave the rails of the track and turn to the north? A. Force of impact.

"15. At what point with reference to the east curb line of Van Buren street did the street car leave the track? A. 5 feet to 8•feet."

Defendant urges that the jury's answer to special question No. 4 (*b*) and to No. 9 are without support in the evidence. Finding No. 4 (*b*) is that when plaintiff has reached the south line of Sixth street the street car was 50 to 75 feet west of Van Buren street. Plaintiff's testimony on this point reads:

"Q. Where was the street car when you entered that intersection, Miss Gardner? A. The car was coming; I judge it would be a distance of about twenty-five feet. . . .

"Q. The second time, [when] you were just entering the intersection, that is, crossing the curb line on the south side of Sixth street? A. Yes, sir. . . .

"Q. And you saw the street car again? A. Yes, sir.

"Q. And at that time it was twenty-five feet west of the west curb line on Van Buren street? A. Twenty-five or fifty feet; yes, sir; I couldn't be positive, Mr. Kline, how much it was. . . .

"Q. . . . was it thirty feet? A. Well, I will say thirty feet; I would not be positive.

"Q. That's your best judgment? A. Yes, sir."

Touching the jury's finding No. 9, that plaintiff could have stopped her automobile in about 15 feet, plaintiff's testimony was that she could stop it in 10 or 12 feet.

However, if this appeal is to be disposed of by determining the proper judgment to be entered on the special findings of the jury, the discrepancies between the plaintiff's testimony and the jury's findings will have to be ignored and the findings accepted as they stand.

It will be noted that the jury found that plaintiff saw the street car when it was 125 or 150 feet west of Van Buren street and when plaintiff was 25 feet south of Sixth street. [Finding No. 3.] So she then knew it was coming. When she was even with the south side of Sixth street plaintiff again saw the street car 50 or 75 feet west of Van Buren. [Finding No. 4.] Thus again she was made aware of its coming. But according to finding No. 5 (*b*), the next and only time she gave the street car any attention was when she was in the

Gardner v. Topeka Rly. Co.

intersection of the track—at the time and point of collision. And this finding accords with plaintiff's testimony:

"Q. I want to know at what point between the south side of Sixth street, south curb line, and the street car tracks you looked again for that street car, Miss Gardner?   A. Well, I just advanced on ahead; I don't believe I looked again; just went on; don't believe I did; no, sir.

"Q. You were going ten or twelve miles at that time, were you, Miss Gardner?   A. Yes, sir.

"Q. And all the time?   A. To my judgment; yes, sir.

"Q. Your speed never changed?   A. No, sir.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Now, how far could you, can you, stop that Cadillac car going at ten or twelve miles an hour?   A. Ten or twelve?

"Q. Was there anything that would have prevented you from stopping that night while you were going across that intersection if you had applied the brakes?   A. No.

"Q. Now, you would have stopped that car, you could have stopped that car at any time after you crossed the south line of that intersection, curb line, within about ten or twelve feet if you had applied the brakes, couldn't you, Miss Gardner?   A. Yes, sir; if I knew that car was coming—

"Q. (Interrupting.)   Just a minute, Miss Gardner; we will get to that. And yet you never looked for that street car after you crossed the south curb line of that intersection, did you?   A. I had seen it, yes.

"Q. But you never looked again?   A. I had seen it when I was on the south sidewalk.

"Q. Yet as you crossed the south line of Sixth street you never looked again for that street car?   A. I saw the street car come; yes, sir.

"Q. When you were on the south line?   A. Yes, sir.

"Q. But you never looked again?   A. When you are driving a car you can't keep your eye on one thing.

"Q. You can watch a street car?   A. And drive at the same time?

"Q. Certainly.   A. I never heard of anyone doing it.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Then you stated you never looked again?   A. Just proceeded to go ahead.

"Q. You never looked any more?   A. I had time to go across, so I went on.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Now, at that time, after you crossed that south curb line of Sixth street, if you had looked and seen that street car you could have stopped it within ten or twelve feet?   A. If I knew it was coming that fast I could of; yes, sir.

"Q. You would have if you had looked?   A. If I had looked.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. If you had looked it would have been very clear to you that you couldn't go across without getting hit, wouldn't you?   A. I don't know.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Everything was clear except the street car was there?   A. If he had come like I thought he was I would have made it.

"Q. If you had looked at any time from the time you left this point (south curb line of Sixth street) until you got on this track you could have stopped that car within ten to twelve feet? A. I could have stopped it if I thought he was speeding.

"Q. Well, you would have stopped it if you had looked; you would have put on your brakes? A. Nobody will throw themselves in front of a car.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. Were you correct a while ago when you testified that after you crossed the south curb line of Sixth street you never again saw that street car? A. I could not be positive, but I think I saw it.

"Q. If you think you saw it, where were you when you saw it? . . . A. On the track."

It will thus be seen from plaintiff's own testimony and the jury's special findings that if plaintiff had been giving ·due regard to her own safety this accident would not have happened. She neither looked towards the street car after she entered the intersection nor did anything required of her by common prudence for her own safety. Between the south side of Sixth street and the railway track was a distance of 37.3 feet. When she was half way across the intersection to the point of collision, the street car had traveled about three times such. a distance and it, too, by that time, must have been well within the intersection, and consequently if she had been paying any attention to the street car she would have known that a collision was inevitable unless she stopped her automobile, and she could have easily stopped it in time to avoid this collision. She was driving at 10 or 12 miles an hour, and could stop her car in 10 or 12 feet—in 15 feet, said the jury. This is her testimony; this is the jury's specific finding on this crucial point. In such a situation the jury's finding No. 1 and the general verdict are manifestly fallacious conclusions which are negatived by the specific finding that she did not look out for the street car nor pay any regard thereto after she crossed the south line of Sixth street until she was at the point of collision, and by the finding, No. 9, that she could have stopped her automobile in 15 feet. These specific findings, as well as plaintiff's own testimony on which they are based, convict the plaintiff of contributory negligence under repeated decisions of this court.

In *Ogden v. Wilson*, 120 Kan. 269, 272, 243 Pac. 284, this court quoted approvingly the doctrine stated some years ago by the supreme court of Michigan:

" 'The crucial principle in this class of cases is that one who neglects to look for a car when there is an unobstructed view, just before entering upon

the track, and is struck by a car before he can walk directly across, is guilty of a neglect of duty in not assuring or reassuring himself that there is not a car directly upon him, of which situation the fact that he is struck is conclusive proof.' (*Manos v. Detroit United Railway,* 168 Mich. 155, 156, 162.)"

In *Galloway v. Interurban Railway Co.,* 97 Kan. 110, 115, 154 Pac. 238, it was said:

"The purpose of looking for an oncoming car is to avoid the danger incident to getting in front of it or so near to it as to cause a collision. The time to do this is while the result of observation may be utilized, and means and opportunity still exist to avoid a collision."

This conclusion just reached is one from which this court sees no escape, and it renders unnecessary the consideration of any of the other assigned errors vigorously urged by defendant.

The judgment of the district court is reversed and the cause remanded with instructions to enter judgment for defendant on the special findings of the jury.