No. 31,024.

TILLIE KEUCHENMEISTER, *Appellee*, v. THE WICHITA
TRANSPORTATION COMPANY, *Appellant*.

(20 P. 2d 457.)

Opinion filed April 8, 1933.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith* and *C. H. Morris*, all of Wichita, for the appellant.

*William J. Wertz, Vincent F. Hiebsch, W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair* and *W. A. Kahrs*, all of Wichita, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the driver of an automobile for damages for personal injuries she sustained when her automobile was struck by a street car at the intersection of two city streets. The jury returned a general verdict for plaintiff. The court granted a new trial with respect to amount of damages only. Defendant appeals.

At the conclusion of plaintiff's evidence, defendant demurred, and the demurrer was overruled. Defendant introduced no evidence, and the cause was submitted to the jury on the evidence for plaintiff. With the general verdict, the jury returned special findings of fact. Defendant moved for judgment on the special findings notwithstanding the general verdict, and the motion was denied. Defendant also filed a motion for new trial, which was granted to the limited extent indicated. Defendant assigns error with respect to the ruling on the demurrer to plaintiff's evidence, and the ruling denying the motion for judgment notwithstanding the general verdict.

The accident occurred at the intersection of Emporia street and Boston avenue in the city of Wichita. From the intersection Em-

poria street extends north and south and Boston avenue extends east and west. At the west side of Emporia street is a depression called a dip. In the center of Emporia street is a street-car track. Emporia street is thirty-six feet four inches wide from curb to curb. The street-car track is four feet ten inches wide, and the distance from rail to curb on each side of the track is fifteen feet nine inches. Boston avenue is twenty-five feet four inches wide from curb to curb.

Driving a Ford sedan, plaintiff approached the intersection from the west on Boston avenue. She was familiar with the crossing—used it every day. A street car was approaching from the south, which plaintiff saw and the speed of which she observed. She testified she looked several times; she looked a number of times; she looked and looked; and she looked as she started to cross the street.

Plaintiff testified she was competent to judge of the rate of speed of the street car, and the street car approached the crossing at the rate of about thirty-two miles per hour. That was her judgment.

A witness who saw the accident and who had operated street cars testified for plaintiff that the street car approached at the rate of about twenty-five miles per hour. Before entering the intersection and when about fifteen feet south of the intersection, the motorman checked the speed of the car by application of the brakes. When the front wheels of the automobile were in the dip, the street car was ninety or one hundred feet south of the intersection. When the front wheels of the automobile went on the street-car track, the street car was about twenty feet away.

The street car struck the right rear wheel and fender of the automobile, and plaintiff was severely injured.

The following occurred at the trial, on cross-examination of plaintiff:

"Q. In your judgment this car was coming at the rate of thirty-two miles an hour and it continued at that rate of speed all of the time from the time you first saw it until the time of the collision; that is correct, isn't it? A. That is a corner there, and they usually slow up.

"(Question read.) A. The car came thirty-two miles an hour, and that is all I can say."

There was no obstruction to the view of either automobile driver or motorman.

The special findings of the jury follow:

"1. At what rate of speed was the street car moving immediately prior to the time it entered the intersection?  A.  About thirty miles per hour.

"2. At what rate of speed was the automobile moving immediately prior to the time it entered the intersection?  A.  About twelve miles per hour.

"3. At what rate of speed was the street car moving immediately prior to the collision?  A.  About twenty-eight miles per hour.

"4. At what rate of speed was the automobile moving immediately prior to the collision?  A.  About ten miles per hour.

"5. Did the plaintiff see the approaching street car before she entered the intersection?  A.  Yes.

"6. If you answer question 5 in the affirmative, then state the location of the street car when the plaintiff first saw it.  A.  About 120 feet south of the intersection.

"7. Did the plaintiff look a second time for the approaching street car? A.  Yes.

"8. If you answer the preceding question in the affirmative, then give the location of—

"(a) Defendant's street car.  A.  About eighty-five feet south of the intersection of Boston and South Emporia avenue.

"(b) Plaintiff's automobile.  A.  The front wheels were entering the dip at the west side of the intersection of Boston and South Emporia avenue.

"9. When the front wheels of plaintiff's automobile were ten (10) feet from the west rail of the street-car tracks, what was the location of the defendant's street car?  A.  About sixty-eight feet south of the center of the intersection.

"10. At what point in the intersection did the collision between the street car and automobile occur?  A.  About four feet six inches north of the south line of Boston avenue.

"11. Was the collision between the two vehicles the result of an unavoidable accident?  A.  No.

"12. In what distance could the plaintiff have stopped her automobile at the rate of speed at which she was traveling when she entered the intersection? A.  Six (6) feet.

"13. What part of the automobile was struck?  A.  Right rear wheel and fender.

"14. Did the plaintiff take any means to stop her car before going upon the track, to speed up her car, or any other means to avoid the collision? A.  No.

"16. Was the defendant's motorman exercising ordinary care just prior to entering the intersection?  A.  No.

"17. If you answer the preceding question in the negative, then state in what manner he failed to exercise ordinary care.  A.  Traveling at excessive speed.  (2) Failure to shut off power and apply brakes soon enough.

"18. What, if any, negligence do you find as against the plaintiff?  A. None.

"19. What, if any, negligence do you find against the defendant?  A.  The defendant's motorman failed to exercise ordinary care and good judgment as evidenced by the fact that he was driving at an excessive rate of speed, failed to shut off power and apply brakes soon enough to avoid the accident."

This court has descanted time and again on privilege of a traveler to cross a street-car track in front of an approaching street car. In some instances incorrect expressions have been used. Thus, in the opinion in the case of *Wiley v. Interurban Railway Co.*, 89 Kan. 84, 130 Pac. 659, it was said:

"One who is struck by a street car while attempting to cross a track is not held guilty of negligence as a matter of law, although he entered upon the track knowing that the car was approaching, if he had reason to believe its distance and speed gave him time to cross in safety." (p. 87.)

There are expressions of the same kind in opinions in other cases. In the Wiley case, however, it was made clear that a person attempting to cross is required to use ordinary care. In no case has the court recognized a different standard, and ordinary care is the care which a reasonably prudent person would exercise for his own safety under the circumstances. The correct rule was stated in the case of *Railroad Co. v. Gallagher*, 68 Kan. 424, 75 Pac. 469:

"The requirement of the law that a man shall look and listen means no more than that he shall observe and estimate with reasonable accuracy his distance from the car and the speed of its oncoming. He is then to make a calculation and comparison of the time it will take the car to come and the time it will take to cross the track, and if, under the same circumstances, a reasonably prudent person would attempt to cross at a given rate of speed he will not be negligent in doing so." (p. 428.)

The result is, plaintiff's conduct is not to be gauged by her notion of whether she had time to cross.

Counsel for plaintiff say she was deceived by the rate of speed of the street car. She did not say that, and she could not have been deceived by the rate of speed. The petition alleged that prior to the collision the street car was running at the rate of thirty miles per hour. At the previous trial plaintiff testified the rate was twenty-five to thirty miles per hour. At the last trial plaintiff testified that the rate was about thirty-two miles. She based her estimate of thirty-two miles per hour, as she saw it coming, on having ridden on street cars and having driven cars. That was her best judgment. She saw the street car coming and had an idea on that day that was the speed of the car. To be sure of speed she had a test made. There was no evidence whatever that speed of the car was slackened until the motorman applied his brakes a fraction of a second before reaching the intersection. The jury found the rate was thirty miles per hour just before entering the intersection and

found that speed was reduced to twenty-eight miles per hour before the automobile was struck. Whatever the rate of speed, plaintiff saw what it was, and she gave no testimony that it was ever greater than she expected it would be. Therefore there was no room for deception by rate of speed.

Plaintiff was asked a plain question concerning rate of speed and maintenance of rate of speed from the time plaintiff first observed the street car until the collision occurred. She did not answer the question. Instead of answering the question she volunteered the statement, "That is a corner there and they usually slow up." When the question was repeated plaintiff merely said the car came at thirty-two miles an hour. Time and again plaintiff explained her conduct in driving in front of the street car. She said she knew she had time to cross. Time and again the statement, refuted by the collision, was stricken out. At no time did plaintiff testify that she drove on the track relying on the fact the street car would reduce its speed. If she did expect the street car to reduce its speed she was charged with knowledge it was not doing so, and she testified she did not believe it did do so.

Plaintiff saw the street car before she entered the intersection at all. She was then about twelve or fifteen feet back of the dip. The street car was then about 120 feet south of the intersection. It was coming at the rate of thirty miles per hour, or forty-four feet per second. At that rate it would reach the intersection in less than three seconds. When plaintiff was ten feet from the west rail of the street-car track, the street car was only fifty-five feet four inches from the south line of the intersection, and two inches short of sixty feet from the line of travel of the south side of her automobile, if she kept on. The street car had not then slackened speed, and she knew it had not slackened speed. Unless speed of the street car were instantly and greatly reduced, it would be upon her in less than a second and a half of time, if she went on. She was in a place of safety. She could stop within six feet when going at the rate of speed she was going when she entered the intersection. So she could stop and still clear the west side of the street car, which overhung the track eighteen inches. She neither stopped nor increased her speed, but she deliberately continued her course and drove in front of the onrushing street car. Granting the motorman was negligent,

it is not debatable that she was guilty of contributory negligence as a matter of law.

The court does not base its declaration that plaintiff was guilty of negligence as a matter of law on the mere fact she did not undertake to stop when she was within ten feet of the west rail of the street-car track. The findings of fact are, in part, conclusions of fact from estimates. But the findings disclose a situation which forbade plaintiff voluntarily to take undue risk. She was not acting under pressure of any emergency, and she commenced to take chances when she entered the crossing. As she proceeded, danger immediately became imminent, and when she was within ten feet of the west rail a collision was inevitable unless she stopped instantly.

Plaintiff undertakes to avoid consequences of her own negligence by charging the motorman with wantonness. Wantonness is reckless indifference to or reckless disregard of consequences under circumstances involving danger to life or safety of others. There was no evidence that the crossing was in a thickly populated district, or was much frequented by travelers on foot or in vehicles, or afforded a narrow range of view. There was no evidence that speed of the street car as it approached the crossing was regulated by ordinance, or was unusual, or was unexpected by plaintiff. There was no evidence of distance in which the street car might have been stopped after plaintiff manifested determination to cross ahead of the street car. The motorman took the only precautions which were taken to avoid the collision, and there is no basis in the evidence for a charge of wantonness on his part.

The judgment of the district court is reversed, and the cause is remanded with directions to set aside the order granting a limited new trial and to enter judgment in favor of the defendant.