Earl A. WILSON and Doris L. Wilson, Respondents,

v.

KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant.

No. 44508.

Supreme Court of Missouri,

Division No. 2.

May 14, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied June 11, 1956.

Charles L. Carr, Kansas City, Frank J. Rogers, Kansas City, for appellant.

Frank L. Cohn & Harry A. Hall, Kansas City, Cohen & Schnider, Kansas City, Harry Hayward, Kansas City, for respondents.

EAGER, Presiding Judge.

Plaintiffs, as the father and mother of a deceased minor child, Earl Oliver Wilson, instituted this action for his death. The minor was killed as the result of a collision between a streetcar of the defendant and an automobile in which he was riding. Plaintiffs and the decedent were residents of Kansas and the injury occurred in Kansas City, Kansas. From a verdict in favor of plaintiffs for $15,000, defendant has appealed, after presenting unsuccessful after-trial motions. The parties will be referred to as they appeared below.

■ After this case was first argued and an opinion filed, a rehearing was granted. The case has been reargued and supplemental briefs filed; in appellant's brief certain new points are argued, which is permissible so long as the points have been properly preserved in the trial court. Sundry points are now relied on for reversal, but, in the view we take, it will only be necessary to consider two.

Defendant insists that its motions for a directed verdict as against each plaintiff should have been sustained because both plaintiffs were guilty of contributory negligence as a matter of law. Assuming that such would bar recovery in Kansas by those of the next of kin who were themselves negligent, we shall consider the matter. Rathbone v. St. Louis & S. F. R. Co., 113 Kan. 257, 214 P. 109; Murphy v. Atchison, T. & S. F. Ry. Co., 353 Mo. 697, 183 S.W.2d 829. At the place in question defendant's double tracks ran on a private right of way, generally northeast and southwest. Hereafter, for convenience, we shall refer to these directions as north and south. Garfield Avenue ran generally east and west, and crossed these tracks. Glendale, another street, ran generally northeast and southwest, west of and along the right of way. South of Garfield two dead-end streets ran up to the right of way from the west, and Wood Avenue (running east and west) intersected the tracks approximately 1,000 feet south of Garfield. As one approached the tracks on Garfield from the east, there was a stop sign on the north side of Garfield, 49½ or 50 feet from the nearest rail. From this point there was a slight rise to the tracks. The tracks ran slightly downhill approaching Garfield from the south.

The collision occurred about 4:00 P. M. on December 23, 1950; the weather was dry, and at least relatively clear. Earl Wilson and his wife were proceeding west on Garfield in a Ford car, with their child, then twenty-five months old, between them on the front seat; Mr. Wilson was driving

and an uncle of one of them was in the rear seat. The evidence favorable to plaintiffs will be used in stating the facts; this consisted not only of the testimony of plaintiffs themselves, but also that of several others who witnessed the accident. Mr. Wilson stopped at the stop sign, or with his bumper perhaps 2–3 feet east of it; he then looked along the car tracks to the south where he had a clear view for a distance of from 400 to 500 feet by his own testimony, and saw no car; other evidence indicated that one could see even further; his wife and the passenger also looked south at this point and saw no car; Mrs. Wilson stated that she could see for a "block." Wilson then started forward, and because there was a "blind corner" to his right (north), consisting of trees, "thick woods," and weeds practically up to the tracks, he looked to his right and continued to do so until his vision had cleared that obstruction; at that time the front of his car was almost on the rails and he said that one had to get that far before he could see to the north; he looked back to the south as soon as he had assured himself that he was clear to the north, and then, for the first time, saw the streetcar coming from the south and about 35 feet away. In moving to that point he had attained a speed of 5–6 miles per hour and could have stopped in a very short distance. When he saw the streetcar, he tried to get on across, as he said his car would have rolled in front of it anyway. The streetcar hit the automobile in the center of its left side and dragged it about 37 feet. Upon leaving the stop sign Mrs. Wilson also looked to the right, and, in fact, she never saw the streetcar prior to the collision. The passenger also looked to the right because "you can't see anything until you get on the track," but he subsequently turned and saw the streetcar when it was about 25–30 feet away. There was evidence that no gong or bell or other warning was sounded, that the streetcar, variously stated, was traveling "forty-five," "forty to fifty," "thirty to forty," and "thirty-five to fifty" miles per hour, and that it did not slacken its speed; some of these estimates of speed were as of a time and at a point almost immediately before the collision;

there was also evidence that the streetcar was "swaying" or "rocking" from side to side.

While not directly applicable on this point, we note that the streetcar operator, a witness for defendant, testified: that the speed of the streetcar was 25 to 30 miles an hour as he approached Garfield; that he saw the Wilson car east of the stop sign and began to slow down; that the automobile was slowing down as if to stop and he then took his foot off the streetcar brake, but instead of stopping, the automobile "just shot on out ahead of me" and there was a collision. The streetcar was one of the newest type; the operator also testified that if it were operated over 30 miles an hour it would sway and rock. Two passengers on the streetcar testified that the speed of the streetcar was normal and not fast.

■ This accident occurred in Kansas, defendant has pleaded that the law of Kansas is applicable, and we shall consider that it governs the substantive rights of the parties. Section 490.070 et seq., and § 509.220 RSMo 1949, V.A.M.S.; Sup.Ct.Rule 3.14, 42 V.A.M.S.; Boneau v. Swift & Co., Mo. App., 66 S.W.2d 172.

■ The Kansas law concerning the duty of one crossing the tracks of a street railway has been discussed very recently by this court in the case of Woodworth v. Kansas City Public Service Co., Mo., 274 S.W.2d 264. The facts there were closely analogous to those here; the differences are largely in degree. The court there noted that under Kansas law one must assure himself that he can cross with safety and that his diligence must be "commensurate with the hazard"; that at times, under unusual circumstances, he should even stop entirely (citing cases, loc. cit. 267). The court further noted the Kansas cases modifying the doctrine that one approaching a street railway track is held to the same or greater precautions than one approaching a railroad track, citing and discussing Kansas City-Leavenworth R. Co. v. Gallagher, 68 Kan. 424, 75 P. 469, 64 L.R.A. 344, and

Atchison, T. & S. F. Ry. Co. v. Schriver, 80 Kan. 540, 103 P. 994, 24 L.R.A.,N.S., 492. In that connection the court quoted from the former case, as follows: " ' "Clearly, it is not negligence in law for one to cross a street railway track in front of an approaching car which he has seen, and which does not appear to him to be dangerously near, and which would not have been so in fact had it been running at its ordinary rate of speed. Whether one who has observed an approaching street car should have also apprehended that it was approaching at such a speed as to reach him before he could cross the track, is generally a question of fact to be determined upon the circumstances of each particular case." ' " And, digesting the decision in the latter case, the court said, 274 S.W.2d loc. cit. 268: " * * * Streetcars are constructed and equipped to be operated along streets where people must and do constantly cross. The speed of the streetcar is comparatively slow, and sufficiently uniform to enable people to form a reasonably accurate judgment as to where the danger line is in crossing. The motorman manages the streetcar with the knowledge that danger is always present and safety can only be secured by constant vigilance. The cars are equipped with appliances which, as far as possible, place them under control. People who are in danger expect to be protected from injury only so long as they themselves use ordinary care. This mutual dependence upon each other places the streetcar service upon a plane of its own. * * *" Having thus considered the Kansas law, this court concluded, 274 S.W.2d loc. cit. 269: "* * * We believe we should not say that plaintiff was guilty of contributory negligence as a matter of law. It seems to us that, when she looked to her right and observed no streetcar approaching from the west within her sight distance of one hundred twenty-five to one hundred seventy-five feet, it could be reasonably said that she was justified in believing no streetcar was dangerously near; and that she could have reasonably relied upon the operator of a streetcar moving eastwardly but beyond the field of her vision to be in the performance of his reciprocal or mutually depend-ent duty to exercise due care. We think she could have reasonably supposed that any streetcar approaching at a greater distance was being operated by a vigilant motorman at his post and at a reasonable rate of speed, and the motorman being in a position to see and to so manipulate the braking equipment of the streetcar as to take commensurate precautions against striking a vehicle approaching and moving over the crossing. We are of the opinion that the question whether plaintiff was negligent in the circumstances was for the jury."

In Stephens v. Bacon, 176 Kan. 460, 271 P.2d 285, 287, there was a collision of two automobiles at the intersection of county roads; plaintiff and her husband had looked both ways, but their view to their right, or south, was limited to approximately two car lengths by the dust from a car which had just passed. Defendant, driving at an excessive speed according to plaintiff's evidence, struck plaintiff's car in the intersection. The court reversed a ruling of the trial court which had sustained a demurrer to the evidence on the ground that plaintiff and her husband were guilty of contributory negligence, and held that plaintiff and her husband "may assume that others using the streets, roads and highways of the state will observe the law and are not guilty of either negligence or contributory negligence * * * unless and until they have knowledge to the contrary." The clear inference of the case is that the plaintiff was justified in entering the intersection if a reasonable person in her position would have believed that he or she, having looked to the south, then had sufficient time to cross ahead of any car which might be coming from the south at a lawful and proper speed. The court there reaffirmed the established principle that where, on the evidence, reasonable minds might differ, the case should be submitted to the jury.

■ In support of its position that Earl Wilson was guilty of contributory negligence as a matter of law, defendant cites Hartman v. Kansas City, L. & W. Ry. Co., 132 Kan. 182, 294 P. 913; Gardner v. Topeka Ry. Co., 123 Kan. 262, 255 P. 83; Orr v.

Hensy, 158 Kan. 303, 147 P.2d 749; Ogden v. Wilson, 120 Kan. 269, 243 P. 284; Spencer v. Kansas City Public Service Co., 137 Kan. 738, 22 P.2d 425; Keuchenmeister v. Wichita Transportation Co., 137 Kan. 344, 20 P.2d 457; Garrison v. Denton, 170 Kan. 79, 82, 223 P.2d 718; and DeGraw v. Kansas City & Leavenworth Transportation Co., 170 Kan. 713, 228 P.2d 527. Defendant also contends that Doris L. Wilson was negligent as a matter of law and cites: Most v. Holthaus, 170 Kan. 510, 227 P.2d 144; Bush v. Union Pac. R. Co., 62 Kan. 709, 64 P. 624; Ferguson v. Lang, 126 Kan. 273, 268 P. 117, 63 A.L.R. 1423, and Gilbert v. Kansas City Rys. Co., 109 Kan. 107, 197 P. 872. The principles announced in these cases are helpful, but we do not feel that the facts in those cases are sufficiently like those in the present case to be controlling. The first five cases so cited involve: a pedestrian who did not look at all before crossing the streetcar tracks; a truck driver who looked and could not see on account of fog, but proceeded onto the tracks; an automobile driver who failed to see an approaching automobile in plain sight; and two situations where the drivers looked and plainly saw the approaching streetcars but nevertheless drove onto the tracks under circumstances clearly indicating a collision. The Keuchenmeister case was also of the latter type but the court fully recognized the right of a traveler, exercising ordinary care, to cross in front of a visible streetcar if the circumstances justify a reasonable belief that he has sufficient time to do so, and so long as he is not merely exercising an arbitrary or personal "notion." The other cases in that group are cited as holding generally that one may not blindly assume that others will exercise reasonable care, if the facts indicate the contrary; but it is also held that he may so assume if he has no such notice, and is himself in the exercise of reasonable care. The cases cited by defendant to show that Doris L. Wilson was negligent involve situations where for all practical purposes the guest did not look at all for approaching danger, or where the guest did look and saw the danger, but sat idly by, giving no warning. None involved a situation even closely analogous to the one we have here. Hold-ing as we do that Mr. Wilson was not contributorily negligent as a matter of law, we could hardly hold that there was a greater duty resting on his wife as a passenger.

■■ For the present purpose we must accept as true the fact that Wilson and his wife both looked to the south, that they could see for 400 or 500 feet or more, and that they saw no car; from this there arises a reasonable inference that no car was then there. And there is no evidence to show that one was then there. We cannot say that Wilson, or his wife, in thereafter watching the blind corner, and assuming that no car, properly operated, would have time to appear and collide with them from the south, was not acting as an ordinarily prudent person might do. In other words, we do not think this was merely their personal "notion." And, the greater the distance they could see, the greater would be their mental assurance of safety. Such situations may not be judged entirely on after-acquired calculations, or as though Wilson were carrying a slide rule. To say the least, reasonable persons might differ as to whether he, or his wife, were negligent as a matter of law. If the streetcar was traveling as fast as plaintiff's evidence indicated, even a very slight slackening of the speed would have avoided the collision. On the contention that plaintiffs were not entitled to assume that the operator would act lawfully because they, themselves, were negligent, there are two answers: (1) we hold that they were not negligent as a matter of law, and hence the whole question was for the jury; and (2) the jury has found that neither plaintiff was negligent. The question of contributory negligence was properly submitted to the jury.

On rehearing defendant has briefed and argued asserted errors in instructions. We now find, and hold, that there is reversible error in Instruction No. 1, given for plaintiffs. This will necessitate further brief factual references.

An amended ordinance of Kansas City, Kansas, was pleaded by plaintiffs and offered in evidence. The material parts are as follows: "No person shall drive or op-

erate a vehicle or street car upon a street at a greater speed than is reasonable and prudent having regard to the traffic, surface, and width of the street and the hazard at intersections and any other conditions then existing. * * * Nor shall any person drive or operate at a rate of speed which is greater than will permit the driver or operator to exercise proper control of the vehicle or streetcar and to decrease speed or to stop as may be necessary to avoid colliding with any person, vehicle, or other conveyance upon or entering the highway in compliance with legal requirements and with the duty (of) drivers and operators and other persons using the highway to exercise due care * * *. Application of indicated speeds. * * * Said indicated speeds are as follows: * * * 2. Twenty-five miles per hour. (a) In any residence or business district * * *." There is nothing in the ordinance, as introduced, concerning a duty to sound warnings. As heretofore stated, the streetcar in question was running on tracks laid on a private right of way, except where this intersected public streets. The next intersection south of Garfield appears to have been approximately 1,000 feet away.

The instruction in question is lengthy, but we quote the major portion thereof, as follows: "The Court instructs the jury that under the Laws of the State of Kansas, it was the duty of the operator of the streetcar mentioned in the evidence, to use reasonable and ordinary care in operating and managing it upon its tracks along the East side of Glendale Avenue and into and across the intersection of its said tracks with Garfield Avenue, and not to operate it at a speed which was greater than would permit him to exercise proper control of said streetcar and to decrease the speed or to stop it, as might be necessary, to avoid colliding with any person or vehicle upon said Garfield Avenue, and to operate the same at a reasonable and prudent speed *not exceeding twenty-five miles per hour in any residential district,* and he was required to keep a proper watch ahead and laterally for other vehicles at or near the point where defendant's streetcar tracks cross Garfield Avenue, and *he was further required to sound a warning of the approach of said streetcar toward Garfield Avenue when the same was being used by persons or vehicles at or near said intersection, and you are instructed that any failure to observe and comply with such requirements of the law would be negligence;* and, you are therefore further instructed, that if you find and believe from the evidence, that at the time and place referred to in the evidence plaintiffs' infant son was riding in the automobile being driven by the plaintiff, Earl A. Wilson, in a Westerly direction upon Garfield Avenue, and that Garfield Avenue was a public highway and thoroughfare in Kansas City, Kansas, and that defendant, by and through its agent, servant and employee, was operating the streetcar referred to in the evidence in a northeasterly direction on its tracks along the East side of Glendale Avenue, also a public highway and thoroughfare in Kansas City, Kansas, and that said streetcar as it approached and entered Garfield Avenue was traveling in excess of twenty-five miles per hour, if so, and at a greater speed than was reasonable and prudent under the circumstances referred to in the evidence, if so, and failed and neglected to keep a proper watch ahead and laterally for other vehicles on and near the point where defendant's tracks cross Garfield Avenue, if so, and failed and neglected to sound a warning of the approach of said streetcar toward Garfield Avenue when he saw or could have seen that the same was being used by the vehicle in which plaintiffs' infant son was a passenger, at and near the intersection of said tracks and Garfield Avenue, if so; and that defendant, by and through its agent, servant and employee, in the respects above submitted was negligent, if so; and that such negligence, if any, directly caused or directly contributed to cause and bring about a collision with the automobile in which plaintiffs' minor son was a passenger, if so, and the injuries to and consequent death of plaintiffs' son, if so, and damages to plaintiffs, if any; then your verdict should be for the plaintiffs * * *". (Italics inserted.) This instruction expressly told the jury that under the law of Kansas it was the duty of the operator to operate the streetcar at a speed "not exceeding twenty-five miles per hour in any residential district"; that, of course, would

include its travel on all the trackage on the private right of way for approximately 1,000 feet south of the point of collision. As we read the ordinance it was and is intended to regulate traffic on streets and highways, not on private rights of way. While we know of no Kansas case in point, we may note the case of Turney v. United Rys. Co., 155 Mo.App. 513, 135 S.W. 93, which is, we think, a fair statement of the general law to this effect. We think, therefore, that the question of speed on the private right of way would be regulated by: (a) ordinary care for the safety of the passengers; and (b) ordinary care *and the ordinance* in crossing intersecting streets; the latter might well be extended to the immediate approach to the intersection. We agree with plaintiffs that under this ordinance the streetcars should cross intersecting streets at a speed not greater than that fixed in the ordinance, but we do not think that the express limitation of 25 miles per hour can be extended or applied to the whole 1,000 feet of right of way southward to the next intersecting street. This element of the instruction is very material because the speed of the car directly affected the *time* within which it would reach the intersection after becoming visible, and it also directly affected the result of Wilson's mental calculations of safety. We consider this to be an affirmative misdirection and do not consider that it was corrected by the subsequent, and rather ambiguous, reference to a speed "in excess of twenty-five miles per hour, if so, and at a greater speed than was reasonable and prudent * * *." That reference in itself could well be construed as at least consistent with the idea that a speed of over 25 miles per hour for an unlimited distance south of the intersection was negligent; and it certainly does not pretend to nullify or in any way qualify the absolute limitation of 25 miles per hour in the travel prior to the "approach." The combination of the speed and time elements here, at all times after the car could be seen, was vital. In the absence of regulation by statute or ordinance, what is a negligent speed is a question for the jury. Woods v. Kansas City Light & Power Co., Mo.App., 212 S.W. 899, 902; State ex rel.

Hauck Bakery Co. v. Haid, 333 Mo. 76, 62 S.W.2d 400, 403; Booth v. Gilbert, 8 Cir., 79 F.2d 790.

The instruction was also erroneous in stating, as a matter of law, that the operator was required to sound a warning if the intersection was being used. The ordinance contains no reference to warnings. Such a positive direction, as to warning or speed, is generally permissible only if required by statute (such as the railway whistle or bell statutes) or ordinance; State ex rel. Hauck Bakery Co. v. Haid, supra. The sounding of a warning may be, and often is, required merely in the exercise of reasonable care; but if, on the contrary, the duty of reasonable care may be fulfilled by slackening speed or stopping, and the operator so elects, we see no reason why he may not do so without any warning. In the absence of statute or ordinance, what is an exercise of reasonable care in this respect is also usually a jury question. There may be circumstances where an affirmative common-law requirement of a warning would be proper, but under the present circumstances we hold that this direction was erroneous and constituted a misdirection of law. As stated with reference to the speed question, we do not think that this was corrected by the later references. Actually, in this instruction there was something in the nature of a dual submission on speed and warning, the two parts of which were, at best, irreconcilable and highly confusing. The misdirections noted were not mere abstract statements, but were directly applied to this particular case and this particular operator. If an instruction is merely incomplete, it may be aided by other instructions, or perhaps even by failing to ask for a more specific instruction, but if there is an actual misdirection it may not be so aided. Brown v. Hershey Land & Lumber Co., 65 Mo.App. 162.

We do not think that these misdirections were rendered nonprejudicial by the so-called conjunctive submission. In the case of Beahan v. St. Louis Public Service Co., Banc, 361 Mo. 807, 237 S.W.2d 105, loc. cit. 107, the court said: "But this rule

of law does not hold that if one of the grounds of negligence is an improper statement of the law, then the instruction is not prejudicially erroneous if it is submitted conjunctively with a ground of negligence that properly states the law. We have just held instruction No. 5 erroneously stated the law when it said if the driver, having seen the defect, would not have considered it dangerous. That error could not become nonprejudicial because it conjunctively stated other defenses properly."

■ This whole doctrine of nonprejudice because of a conjunctive submission has been criticized in Adams v. Thompson, Mo. App., 178 S.W.2d 779, 785, where it is said that it "tends to lead to confusion instead of clarity"; while it has been followed in many cases, we certainly see no reason for extending it. Generally, it has been applied in those instances where issues have been submitted which are not properly supported by the evidence or the pleadings, but where they are so submitted conjunctively with other issues which are correctly hypothesized and are properly supported.

We note the recent case of Bidleman v. Morrison Motor Freight, Inc., Mo.App., 273 S.W.2d 745, which indicates that the Beahan case, supra, is distinguishable on its facts; perhaps it is, but it states a rule of law worthy of serious consideration. It appears from the opinion in the Bidleman case that there the correctly submitted hypothesis of negligence was one which the jury, in fact and not in mere theory, *must* have found to exist in order for the accident to have occurred at all.

We hold that the court may in such instances examine the individual instruction presented, and determine whether it was, in fact, confusing or misleading and thus prejudicial. There is certainly a limit beyond which this principle should not be extended. It could hardly be argued that an instruction containing ten improper submissions and one proper one should be upheld.

■ Returning to the present instruction, the only submitted ground of negligence not already discussed is the failure "to keep a proper watch ahead and laterally"; we doubt whether this contains a sufficient definition of the duty thereby imposed. But we prefer to rest our conclusion upon the fact that this instruction was prejudicially erroneous in affirmatively misdirecting the jury as a matter of law on speed and warning, in a manner lending much emphasis to the error, and in combining common law negligence and the supposed violations of the ordinance in a highly confusing manner; the instruction was thus so misleading, confusing, and argumentative, that we cannot possibly say that the jury, in fact, found that the accident was caused or "directly contributed to" by the one element of negligence which may, conceivably, have been properly submitted. This is particularly true in view of the state of the evidence on the question of keeping a watch.

This instruction is further criticized because it directs a verdict if the hypothesized negligence "directly caused or directly contributed" to the injury, instead of requiring a finding of proximate cause. On this, counsel cite Moon v. St. Louis Transit Co., 247 Mo. 227, 152 S.W. 303. There was no negligence asserted here except that of defendant and plaintiffs; and the alleged contributory negligence of plaintiffs was covered both in this instruction and others. We need not and do not rule on this contention, as plaintiffs will undoubtedly be guilded by this criticism at the next trial. The same suggestion may apply to Instruction No. 5, which is also criticized. We may say that we have some doubt of its propriety in its present form, although there would seem to be difficulty in reconciling the various Kansas cases.

Other points have been vigorously urged, pro and con, in briefs and argument. In view of the determination now made these need not be decided, and to do so would merely complicate the matter. These points are such that they will undoubtedly be kept in mind at any trial which may hereafter ensue, and they are also such as may be readily corrected. The judgment will be reversed and the cause remanded. It is so ordered.

All concur.