Farrell E. BRESHEARS, Eva M. Breshears, Edwin Breshears, Helen Breshears, Carl Williams, Emma Williams, W. C. Williams, Gertrude E. Williams, Clarence Powell, Ruby Shin, Clarence Crabtree, Verda May Crabtree, W. A. Thomas, Nora Lay, Leo Tatum, William F. Watkins, Eva Watkins, Bob Shin, Bill Ed Moree, J. W. Shockmann, Jane Shockmann, Respondents,

v.

UNION ELECTRIC COMPANY OF MISSOURI, a Corporation, Appellant,

and

Ada A. Stephens, Rettie Jones, Flora Jones, Fred T. Harris, Claude Kays, Vesta Kays, Wilbur Boring, Lucile Boring, Defendants.

No. 47912.

Supreme Court of Missouri,

En Banc.

June 12, 1961.

H. C. Salveter, Sedalia, Harry H. Kay, Eldon (John A. Woodbridge, St. Louis, of counsel), for appellant.

George H. Miller, Sedalia, F. M. Brady, Warsaw, C. P. Junge, Cole Camp, William Neff, Warsaw, for respondents.

STOCKARD, Commissioner.

Plaintiffs sought damages for tort in the nature of trespass for the loss of crops resulting from the flooding in June and July 1951 of their respective farms alleged to have been caused by the construction, operation and maintenance by Union Electric Company of Missouri of the Bagnell Dam and the Lake of the Ozarks formed thereby. The petition was in thirteen counts, each count relating to a separate farm, and the trial resulted in a judgment in favor of plaintiffs on each count in an aggregate amount of $37,535.58. From the judgment entered Union Electric Company has appealed. We shall refer to the parties as in the trial court.

In the years 1929–31 defendant constructed a hydro-electric dam across the Osage River, a natural water course, near Bagnell, Missouri. The dam is approximately 95 miles downstream from Warsaw, Missouri, and when the level of the lake is 660 feet above mean sea level, considered to be full reservoir, the impounded waters extend to the County Line Bridge between Henry and St. Clair Counties approximately 30 miles upstream from Warsaw. Defendant has easements on some or all the farms for flooding extending from 667 to 674 feet above mean sea level. The farms of the various plaintiffs are located near the Osage River between Warsaw and the County Line Bridge, or on the Pomme de Terre River or the Little Pomme de Terre River which flow into the lake upstream from Warsaw. It is conceded that the

lands were flooded at the time alleged, and there is no contention that the lands on which the crops were damaged or destroyed by the flooding were not located above the easements of defendant.

Plaintiffs' theory of recovery, as stated in the petition, was that (1) the maintenance and operation of the Bagnell Dam retarded and slowed the current and flowage of the water in said Osage River and its tributaries, and has caused large quantities of silt, sand, gravel, clay and other materials being carried in said water to settle to the bottom, thereby filling up the beds of said river and its tributaries, and decreasing the water carrying capacity of said streams so that in times of heavy rainfall the floodwater is not carried away at a normal rate and in normal amounts thereby contributing to cause the floodwater to back up and overflow plaintiffs' lands, and (2) the lake resulting from the dam acts as a retarding agent upon the natural drainage of overflow waters from the Osage River and its tributaries thereby greatly impairing and decreasing the natural floodwater carrying capacity of the Osage River and its tributaries near the lake and contributing to cause the overflow of plaintiffs' land and the floodwaters to remain upon plaintiffs' land for a considerable period of time. Defendant requested only a cautionary and burden of proof instruction, but its theory of defense, as revealed by its evidence, was that there was no material restriction of the river channel from silting, the lake did not retard the floodwaters so as to affect plaintiffs, and the flood was of such magnitude that plaintiffs' farms would have been flooded whether or not the dam had been built.

On this appeal defendant challenges Instruction No. 1 given on behalf of the plaintiffs which is as follows:

"The Court instructs the jury that if you find and believe from the evidence that in the months of June and July, 1951, the defendant Union Electric

Company, owned and operated a hydro-electric dam across the Osage River at Bagnell, Missouri, and if you further find that said dam impounded the water of the Osage River, creating a reservoir which at full stage of 660 feet above mean sea level extended from Bagnell, Missouri, to approximately the County line between Henry and St. Clair Counties; and if you further find and believe that Plaintiffs farms involved in this lawsuit lay along or nearby the Osage River and its tributaries above Warsaw and below the County Line Bridge; and if you further find and believe from the evidence that in the latter part of June and in July of 1951 said Osage River became flooded to the extent that the crop land belonging to plaintiffs and being rented by plaintiffs and described in evidence became flooded and the crops thereon described in evidence destroyed; and if you find and believe from the evidence that under all the conditions then and there existing plaintiffs' crops would not have been flooded and destroyed had it not been for the maintenance and operation of the said Bagnell Dam by defendant (if you so find); and if you find that the flooding of the crop land in question and the destruction of the crops thereon directly and proximately resulted from the construction, maintenance and operation of the dam, and that thereby plaintiffs suffered loss and damage, then your verdict should be for the plaintiffs and against the defendant."

Defendant challenges this instruction because, although it is a verdict-directing instruction, it does not require the jury to find any of the facts essential in law to support a verdict in favor of plaintiffs but authorizes the jury to find for plaintiffs if it finds "that under all the conditions then and there existing" plaintiffs' crops would not have been destroyed had it not been for the maintenance and operation of the Bagnell Dam and that the destruction of the crops "directly and proximately" resulted from the construction, maintenance and operation of the dam.

■ This instruction is identical in its form and substance to the plaintiffs' verdict-directing instruction in Breshears v. Union Electric Company of Missouri, Mo. Sup., 313 S.W.2d 638, 641, which was held not to be erroneous under the precise circumstances of that case. There, as here, appellant challenged the instruction on the ground that it did not require the jury to find the facts essential in law to support the verdict. In that case it was correctly held that there "can be no question as to the general rule that a plaintiffs' verdict-directing instruction should hypothesize and submit, either by recital or by reference to other instructions, the facts essential in law to support plaintiffs' recovery," and that although the essential elements of negligence and trespass are different, the above general rule "is also applicable in an action in the nature of trespass." Jennemann v. Hertel, Mo.App., 264 S.W.2d 911. However, it was stated that it is not reversible error to omit from a verdict-directing instruction the specific hypotheses of facts which are undisputed and in effect conceded, and it was then held that there was no issue as to the "conditions" but that the real issue was whether under those admitted conditions plaintiffs' lands would or would not have been flooded had it not been for the construction, maintenance and operation of the dam and installations. For these reasons it was held that the issue of "causation" between the construction, maintenance and operation of defendant's installations and the floodings of plaintiffs' lands and loss of crops was fairly and clearly submitted by the verdict-directing instruction of the plaintiffs and by a verdict-directing instruction given at the request of the defendant. The conclusion in that case that there was no real issue as to the "conditions" was reached primarily by reference to the asserted "essential facts" set out in appellant's brief. The result was to rule that what appellant point-

ed out and relied on as differences in "essential facts" were really only differences as to the effect of undisputed facts. Recognizing the effect of the ruling in the previous case, defendant in this case has attempted to point out in its brief what it contends to be a "sharp conflict" in the evidence as to the "conditions then and there existing," as distinguished from a conflict in the evidence as to the *effect* of admitted conditions.

Plaintiffs introduced evidence, tending to show that in the neighborhood of Warsaw, Missouri, downstream from the plaintiffs' farms, the Osage River had silted up in the bed, in the sloughs, and along the banks thereby restricting the capacity of the channel of the river; that this silting resulted from a slowing up of the water by reason of the presence of the lake created by defendant's dam; and that by reason of this restriction the floodwaters occurring in June and July 1951, instead of passing on down the river channel, were caused to spread out and flood plaintiffs' farms and destroy their crops. Plaintiffs' evidence was voluminous, but a few of the physical facts testified to which, under their theory, resulted in the flooding of their lands were that while the widest place in the river between the County Line Bridge and Highway 65 Bridge used to be at Warsaw, it had now silted up so that one could throw a baseball across the river, and that there were extensive accumulations of silt at Walthal Island, Brill's Hill, Wingate Island and Smart Island. Plaintiffs' witness Breshears testified that at Walthal Island silt had accumulated from the present edge of the water back to a line placed on a photograph of the area and at Wingate Island "the slough side is practically filled up and the water has got to go down the main channel of the river if it gets down." Plaintiffs' witness Drake testified that at Walthal Island the channel had been restricted "at least 30 percent." Several witnesses testified that after the dam was built the velocity of the floodwaters was considerably slower than before. Plaintiffs'

expert witness Horstmann testified that in the area of plaintiffs' farms the capacity of the river channel is 80,000 cubic feet of water per second.

Defendant introduced evidence to the effect that at Warsaw the river is the widest for a distance of 50 or 60 miles upstream and is 800 feet wide at the top of its banks. Its witness also testified that at Walthal Island the original soil is eroding and the line on the photograph referred to by plaintiffs' witness Breshears is 440 feet away from the original bank line; that the channel at the upper bridge at Warsaw had silted in less than 10 percent and downstream to the middle bridge the silting was less than one or two percent; that at Wingate Island water flows around the island when the stage is 16 feet below the 660 foot level; that after the dam was built there was no difference in the current after the river gets up; and that the capacity of the river channel in the neighborhood of plaintiffs' farms is 42,000 to 45,000 cubic feet of water per second. Defendant also introduced in evidence, in the form of graphs certain records referred to as "cross-sections" which showed the conditions in the neighborhood of Warsaw of the river bed, banks and flood plain, and which showed the intervening changes at various times between 1931 and the early part of 1953. The areas of silting and scouring between 1948 and 1953 were shown in different colors. Defendant's expert witness interpreted each cross-section, and his testimony may be summarized to the effect that there had been filling and scouring over the past 22 years but the overall change in the area of the channel and flood plain would be minor and would not adversely affect the capacity of the river channel.

Plaintiffs also introduced evidence to the effect that the lake itself had a retarding effect on the floodwaters, and that as the level of the lake was permitted to rise the retarding effect was increased; that defendant continued to "store" water in the lake until immediately before the crest of

the 1951 flood was reached and until the level of the lake exceeded 664 feet above sea level; and that by reason thereof the floodwaters were caused to back up and spread out over plaintiffs' farms which were located upstream. One of plaintiffs' witnesses testified that if the level of the lake had been kept at 660 feet above sea level the height of the water on plaintiffs' farms would have been reduced materially. On the other hand, defendant introduced in evidence a graph upon which the gauge readings at various points on the river channel were shown, and this graph and the testimony of defendant's expert witness, if believed by the jury, demonstrated that the lake had no retarding effect on the 1951 floodwaters further upstream than a point below plaintiffs' farms. This expert witness also testified that the floodwaters were flowing past the plaintiffs' farms without interruption.

■ We have set out only a small portion of the conflicts in the evidence, some of which defendant specifically pointed out in its brief and some of which we have noted from our study of the record. There is no question but that the 1951 flood was a "major" flood and one of the "greatest." The basic issue in the case was whether plaintiffs' farms would have been flooded even though defendant's dam and lake had not been constructed, as defendant contends, or whether, as plaintiffs contend, their farms would not have been flooded except for the reason that defendant's dam and lake had caused the river channel to become restricted so that it could not carry away the floodwaters, or except for the reason that the presence of the lake retarded the flow of the floodwaters. The challenged instruction did not require the jury to find the essential facts necessary to support either theory of the plaintiffs, as determined from their pleadings and evidence, upon which they contended defendant was legally liable for their damages. However, it is obvious that if the jury believed defendant's evidence it was not legally liable therefor. Unless some exception or special circumstance exists this case clearly falls within the well-established and often repeated rule set out in Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500, as follows: "Where the evidence presents two or more divergent sets of essential facts, under one or more of which plaintiff would be entitled to recover and under one or more of which he would not, then a verdict-directing instruction or instructions given in his behalf should hypothesize, either by recital or by reference to other instructions, the facts essential in law to support the verdict."

Plaintiffs rely on the ruling in Breshears v. Union Electric Company, Mo.Sup., 313 S.W.2d 638, previously referred to, and on Ferguson v. Union Electric Company, Mo. Sup., 305 S.W.2d 401, and Cunningham v. Union Electric Company, Mo.App., 221 S. W.2d 758. As previously noted, in the Breshears case, the court looked only to the matters set forth in the brief of the appellant in that case, and determined therefrom that the appellant did not "indicate the evidence was in sharp conflict as to the 'conditions' of silting and the high level of the waters at and around the named islands and in the body of the lake," but that it demonstrated that the evidence was in conflict on the issue of the *effect* of those conditions in restricting or retarding the flow of the waters and causing the overflow onto plaintiffs' lands. We have previously pointed out that defendant has demonstrated that there were two divergent sets of essential facts as to the silting, and we think that the testimony of defendant's witness that the flow of the floodwaters as revealed by the gauge readings shown on the graph constituted one set of facts divergent from the essential facts in the testimony of the witness of plaintiffs from which the jury could determine whether or not the presence of the lake acted as a retarding agent upon the natural flow of the floodwaters. We do not consider that the earlier Breshears case is controlling here. In addition, that case clearly indicates that the result there reached was based upon a failure of the

appellant to point out the differences in essential facts in the evidence, not that they did not exist.

Ferguson v. Union Electric Company, supra, is readily distinguishable from this case in that the instruction in that case required a finding that "as a result of the construction, operation and maintenance of the dam * * * silt deposits had been formed in the channel and along the banks of the Osage River in and around Warsaw * * *; and if you further find that said silt deposits retarded the flow of the Osage River and its tributaries in the vicinity from Warsaw, Missouri west past Plaintiffs' farms in June and July 1951 thereby causing the floodwaters of the Osage River to go upon Plaintiffs' farms * * *." [305 S.W.2d 403.] This was followed by the general statement, in the conjunctive, that "if you find and believe from the evidence that under all the conditions then and there existing the plaintiffs' crops would not have been flooded had it not been for the maintenance and operation of the said Bagnell Dam * * *." A finding of the essential facts legally necessary to support a finding for the plaintiffs was there required.

Cunningham v. Union Electric Company, supra, also relied on by respondents, is not so readily distinguishable. The instruction there approved is substantially the same as that under question here. However, in that case the plaintiffs did not claim the right to recover on two theories but only one, that the silt had been caused to accumulate and it caused the flooding of their lands, and the defendant requested and the court gave an instruction removing from consideration the question of whether the presence of the dam and lake contributed to cause the damage. Another of defendant's instructions in that case stated that "if you find and believe from the evidence that the silt and sediment, if any, in the channel and flood plain * * * did not materially contribute to the overflow of plaintiffs' property, and the damages to their property, then you are instructed that plaintiffs are not entitled to recover and you shall find for the defendant." [221 S.W.2d 761.] In this way the defendant made known to the jury the essential facts essential for plaintiffs' recovery. In the Cunningham case the court held that in view of all the evidence the conditions then and there existing were made fully known to the jury by the witnesses, "and if not, were clarified by the defendant's instructions 1, 2 and 3."

In this case plaintiffs based their right to recover on two separate and distinct theories, and defendant gave no clarifying instructions. The defendant should not be required to offer "clarifying" instructions when plaintiffs made no hypothesis of facts at all. The question which immediately arises is, what does he clarify? In Hooper v. Conrad, supra, 260 S.W.2d at page 501, it was said that "if either of the parties deems *a hypothesized fact or situation* not to have been clearly or sufficiently hypothesized in any instruction, he should offer a clarifying or amplifying instruction" (Emphasis added). This does not mean that when plaintiff hypothesizes no facts in his instruction the defendant must hypothesize facts and thereby specify or determine a theory of recovery for plaintiff.

We conclude that the facts legally essential to plaintiffs' right to a verdict against defendant were not made known to the jury by the instruction, and this case clearly falls within the quoted rule announced in Hooper v. Conrad, supra. It is unfortunate if plaintiffs were led to believe by the earlier Breshears case that the verdict-directing instruction, held not to be erroneous under the precise circumstances of that case and the situation on that appeal, had been approved for use in all flood damage cases. However, we do not think that that case purported to change the general rule announced in Hooper v. Conrad and consistently followed, and when the particular circumstances which permitted the ruling in that case are not present, as

we find the case here to be, the general rule applies.

For the above reasons the judgment is reversed and the cause is remanded.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court en banc.

All concur except WESTHUES, J., who dissents.